652 S.E.2d 754

**Mary E. MILLER, Respondent**

v.

**Burl E. MILLER, Jr., Appellant.**

No. 4299.

Court of Appeals of South Carolina.

Submitted Sept. 1, 2007.

Decided Oct. 5, 2007.

446

Burl E. Miller, Jr., of Savannah, GA, Appellant Pro Se.

Mary E. Miller of Greenville, Respondent Pro Se.

ANDERSON, J.:

Burl E. Miller, Jr. (Husband) contends the family court erred by: (1) holding him in contempt for barring Respondent's (Wife's) entry into the marital home to retrieve property, removing property from the marital home, and secreting the property in another location; (2) requiring the return of certain property to Wife; (3) failing to find Wife in contempt; and (4) ordering him to pay a portion of Wife's attorney's fees. We affirm as modified.[1]

## *FACTUAL/PROCEDURAL BACKGROUND*

Wife initiated an action for separate support and maintenance, equitable division of marital property, and other related relief in August of 2004. Husband and Wife reached an agreement resolving all issues on a temporary basis. The family court approved the parties' agreement as the Temporary Order of the Court, finding "[b]oth parties expressed their opinion that they believed the [temporary] agreement to be in their best interests. . . . The parties further affirmed their understanding that their agreement will be set forth in a Temporary Order of this Court, and as such, that the agreement is enforceable by the contempt powers of this Court."

The Temporary Order provided, in pertinent part, that:

1. The former marital home will be placed on the market for sale, with the [Husband] making necessary repairs to the master bathroom, the kitchen ceiling, and the fountain in the front yard. [Husband] will replace the original locks on the doors and replace the doorknobs.

2. [Husband] will make the monthly mortgage payment on the home, in the approximate amount of $2,200.00 and

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

[Wife] will pay for the lawn maintenance. The parties will split the utility bills for the home while it is on the market. . . .

3. Each party will keep the vehicle in his or her respective possession and pay the expenses of said vehicles. The parties will each obtain insurance on the vehicles in his or her possession, and neither will list the other as a driver on the others' automobile insurance policy.

. . .

8. [Wife] will remove all remaining property from the former residence, to prepare it for sale, and she will store such property at her residence.

9. The parties will be mutually restrained from liquidating or transferring any marital assets or property of any type to other parties, hiding or secreting said property and/or assets and/or removing money from any bank accounts other than those necessary to pay the monthly household bills and expenses.

Wife vacated the marital home shortly after the parties separated in order to prepare the home for sale. Husband lived with his parents when the parties separated but moved back into the home in October, 2004, and remained there until the end of November, 2004.

On several occasions Wife attempted to gain access to the marital home to retrieve remaining property as directed by the Temporary Order. Wife testified Husband prevented her from entering the marital home. Witnesses Sandy Weaver and Genie Shealy generally corroborated Wife's testimony that Husband had not allowed her entry into the home after several attempts. Wife averred Husband changed the locks on the doors without her knowledge or consent, making entry impossible.

On one occasion Wife pre-arranged a time with Husband to remove the remaining items from the home. She rented a U–Haul truck and enlisted the help of several family members. Wife claimed Husband had one week's notice of this scheduled removal. However, on the day Wife and her family planned to secure the property, Husband's friend, apparently acting on Husband's behalf, barred them from entering the home. When wife eventually entered the home on a later date, she

found the remaining property she was to retrieve pursuant to the Temporary Order, including a vintage Ford Mustang, had been removed.

On cross-examination Wife admitted she had alternative access to the home through the garage door. However, Wife's attorney had advised her not to enter the home on her own while Husband was living there.

Husband denied he hindered Wife's entry into the home, maintaining he prevented her entry at the originally appointed time only because he had to go out of town and needed to reschedule. He claimed she could have arranged to enter at a later time. Husband acknowledged, however, that he had removed items, including the Ford Mustang, from the marital home and was currently storing property in a another location.

Wife filed an initial Rule to Show Cause motion on or about December 7, 2004, charging, *inter alia*, that Husband had refused to allow Wife access to the marital home to retrieve remaining property as ordered by the Court. Wife filed an Amended Contempt Complaint on January 27, 2005, for additional violations of the Temporary Order, alleging Husband (1) refused to cooperate in the preparation and sale of the marital home, (2) changed the locks on the doors of the marital home, (3) prevented her from retrieving her personal belongings, and (4) moved the majority of her belongings to another state without Wife's knowledge or consent.

Husband filed a Rule to Show Cause, Answer and Counter-claim against Wife on February 9, 2005, complaining that Wife violated the Temporary Order by failing to (1) return business records and computer accessories, (2) pay for lawn maintenance, and (3) remove and store at her residence the remaining property in the marital home.

The family court found Husband in contempt for barring Wife from entering the marital home to retrieve remaining property and ordered him to return the Ford Mustang and all its parts to Wife within thirty (30) days of the hearing.[2] Wife

---

2. The family court addressed other issues not relevant to this appeal, including the Temporary Order's requirement that Husband and Wife split the utility bills while the home was on the market.

was ordered to return business records and computer accessories to Husband within thirty (30) days.

Husband filed a Motion for Reconsideration. In an Amended Order dated March 31, 2005, noting that neither party proved all the allegations set forth in his or her Contempt Complaint, the family court held:

6. It is explicit and unequivocal that [Husband] is in willful contempt of this Court for refusing to allow [Wife] to retrieve her personal belongings from the marital home, for removing the belongings from the marital home, and from South Carolina, and for secreting the belongings in or near Savannah, Georgia, without [Wife]'s knowledge or consent which he had no right to do. This has been proven to a clear and convincing standard of proof. The [temporary] order clearly allows and required the [Wife] to remove all marital property from the marital home. [Husband] should, and hereby shall, return [Wife]'s property to her, at his own expense, within thirty (30) days of this Order. This includes the Ford Mustang automobile and all parts, at an agreed upon location and time and in the condition as when removed. Should [Husband] not return the property within that time, he shall immediately begin serving a sentence of twelve (12) months incarceration in the Greenville County Detention Center. [Husband] to be released by the return of such property. The act of removal and the act of barring the wife is criminal contempt. These acts have been proven beyond a reasonable doubt.

. . .

8. The [Husband] did change the locks on the doors and occupy the marital home, thereby making it impossible for the wife to enter the home. He or his friend actually barred the [Wife]. The Court further finds that [Wife] did not enter the marital home to retrieve her personal belongings, as set forth in the Temporary Order, due to the [Husband]'s preventing [Wife] from doing so. Therefore, the Court finds that [Wife] is not in contempt on such charges.

### ISSUES

I. Did the family court err and abuse its discretion in finding Husband in contempt for refusing to allow Wife to

retrieve remaining property from the marital home, removing the property from the marital home, and secreting the property in or near Savannah, Georgia?

**II.** Did the family court err in finding Husband in criminal contempt?

**III.** Did the family court err in ordering Husband to return the Ford Mustang and all parts to Wife?

**IV.** Did the family court err in finding Wife was not in contempt for failure to remove and store remaining property from the marital home because Husband prevented her from entering the home to retrieve the property?

**V.** Did the family court err and abuse its discretion in ordering Husband to pay two-thirds (2/3) of Wife's attorney's fees and costs in the amount of $5,321.63?

Husband contends the family court erred in not finding Wife in contempt for failure to pay for lawn maintenance. The family court did not rule on this issue at the hearing or in the Amended Order, and Husband neglected to raise it in his Motion for Reconsideration. Therefore, this issue is not preserved and we decline to address it on review.

## STANDARD OF REVIEW

An appellate court should reverse a decision regarding contempt "only if it is without evidentiary support or the trial judge has abused his discretion." *Durlach v. Durlach*, 359 S.C. 64, 70, 596 S.E.2d 908, 912 (2004) (quoting *Stone v. Reddix-Smalls*, 295 S.C. 514, 516, 369 S.E.2d 840 (1988)); *see also Henderson v. Henderson*, 298 S.C. 190, 197, 379 S.E.2d 125, 129 (1989) ("A finding of contempt rests within the sound discretion of the trial judge."). "An abuse of discretion occurs either when the court is controlled by some error of law or where the order, based upon findings of fact, lacks evidentiary support." *Townsend v. Townsend*, 356 S.C. 70, 73, 587 S.E.2d 118, 119 (Ct.App.2003).

"A determination of contempt is a serious matter and should be imposed sparingly; whether it is or is not imposed is within the discretion of the trial judge, which will not be disturbed on appeal unless it is without evidentiary support." *Floyd v. Floyd*, 365 S.C. 56, 72, 615 S.E.2d 465, 473 (Ct.App.

2005) (quoting *Haselwood v. Sullivan,* 283 S.C. 29, 32–33, 320 S.E.2d 499, 501 (Ct.App.1984)).

*LAW/ANALYSIS*

## I. CONTEMPT

■ "The power to punish for contempt is inherent in all courts. Its existence is essential to the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders and writs of the courts, and consequently to the due administration of justice." *Floyd,* 365 S.C. at 73, 615 S.E.2d at 474 (quoting *Curlee v. Howle,* 277 S.C. 377, 382, 287 S.E.2d 915, 917 (1982)); *State v. Stanley,* 365 S.C. 24, 38, 615 S.E.2d 455, 462 (Ct.App.2005); *see also In re Brown,* 333 S.C. 414, 420, 511 S.E.2d 351, 355 (1998) ("The power to punish for contempt is inherent in all courts and is essential to preservation of order in judicial proceedings."); *State ex rel. McLeod v. Hite,* 272 S.C. 303, 306, 251 S.E.2d 746, 748 (1979) (instructing that a court has the inherent authority to punish offenses calculated to obstruct, degrade, and undermine the administration of justice, and such power cannot be abridged).

The United States Supreme Court discussed the court's contempt power in an 1888 case, *In re Terry:*

[C]ourts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum in their presence, and submission to their lawful mandates. . . . "The power to punish for contempts is inherent in all courts. Its existence is essential to the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders, and writs of the courts; and consequently to the due administration of justice. The moment the courts of the United States were called into existence and invested with jurisdiction over any subject, they became possessed of this power." And such is the recognized doctrine in reference to the powers of the courts of the several states. . . . "The power to punish for contempt is inherent in the nature and constitution of a court. It is a power not derived from any statute, but arising from necessity; implied, because it is necessary to the exercise of all other powers." Without such power . . .

the administration of the law would be in continual danger of being thwarted by the lawless.

128 U.S. 289, 303, 9 S.Ct. 77, 32 L.Ed. 405 (1888) (internal citations omitted) (quoted with approval in *State v. Goff*, 228 S.C. 17, 22–23, 88 S.E.2d 788, 790–91 (1955)).

"Contempt results from the willful disobedience of an order of the court." *Bigham v. Bigham*, 264 S.C. 101, 104, 212 S.E.2d 594, 596 (1975); *Smith v. Smith*, 359 S.C. 393, 396, 597 S.E.2d 188, 189 (Ct.App.2004); S.C.Code Ann. § 20-7-1350 (Supp.2004) (A party may be found in contempt of court for the willful violation of a lawful court order.). "A willful act is one which is 'done voluntarily and intentionally with the specific intent to do something the law forbids, or with the specific intent to fail to do something the law requires to be done; that is to say, with bad purpose either to disobey or disregard the law.'" *Widman v. Widman*, 348 S.C. 97, 119, 557 S.E.2d 693, 705 (Ct.App.2001) (quoting *Spartanburg County Dep't of Soc. Servs. v. Padgett*, 296 S.C. 79, 82–83, 370 S.E.2d 872, 874 (1988)). "Where a contemnor is unable, without fault on his part, to obey an order of the court, he is not to be held in contempt." *Smith–Cooper v. Cooper*, 344 S.C. 289, 301, 543 S.E.2d 271, 277 (Ct.App.2001).

The determination of contempt ordinarily resides in the sound discretion of the trial judge. *State v. Bevilacqua*, 316 S.C. 122, 129, 447 S.E.2d 213, 217 (Ct.App.1994). "In a proceeding for contempt for violation of a court order, the moving party must show the existence of a court order and the facts establishing the respondent's noncompliance with the order." *Hawkins v. Mullins*, 359 S.C. 497, 501, 597 S.E.2d 897, 899 (Ct.App.2004); *Eaddy v. Oliver*, 345 S.C. 39, 42, 545 S.E.2d 830, 832 (Ct.App.2001). "[B]efore a court may find a person in contempt, the record must clearly and specifically reflect the contemptuous conduct." *Widman*, 348 S.C. at 119, 557 S.E.2d at 705. "Once the moving party has made out a prima facie case, the burden then shifts to the respondent to establish his or her defense and inability to comply with the order." *Id.* at 120, 557 S.E.2d at 705.

"It is within the trial court's discretion to punish by fine or imprisonment all contempts of authority before the court." *Brandt v. Gooding*, 368 S.C. 618, 628, 630 S.E.2d 259,

264 (2006) (citing S.C.Code Ann. § 14–5–320 (1976)). "In addition, courts have the inherent power to punish for offenses that are calculated to obstruct, degrade, and undermine the administration of justice." *Id.* (citing *State ex rel. McLeod v. Hite,* 272 S.C. 303, 305, 251 S.E.2d 746, 747 (1979)).

## A. Direct v. Constructive Contempt

 "Direct contempt is defined as contemptuous conduct occurring in the presence of the court." *State v. Kennerly,* 331 S.C. 442, 450, 503 S.E.2d 214, 219 (Ct.App.1998) *aff'd by* 337 S.C. 617, 524 S.E.2d 837 (1999) (citing *State v. Goff,* 228 S.C. 17, 88 S.E.2d 788 (1955)). "South Carolina courts have always taken a liberal and expansive view of the 'presence' and 'court' requirements. This State's courts have held the 'presence of the court' extends beyond the mere physical presence of the judge or the courtroom to encompass all elements of the system." *Kennerly,* 337 S.C. at 620, 524 S.E.2d at 838. "[T]he court consists not of the judge, the jury, or the jury room individually, but all of these combined. The court is present wherever any of its constituent parts is engaged in the prosecution of the business of the court according to the law." *Id.* at 620–21, 524 S.E.2d at 838 (citing *Goff,* 228 S.C. at 23, 88 S.E.2d at 791).

 "Constructive contempt is contemptuous conduct occurring outside the presence of the court." *Kennerly,* 331 S.C. at 451, 503 S.E.2d at 219 (citing *Toyota of Florence, Inc. v. Lynch,* 314 S.C. 257, 442 S.E.2d 611 (1994)).

 "The distinction between direct and constructive contempt is important because it determines how the contempt proceedings must be brought." *Id.* "A rule to show cause for direct contempt may be issued without a supporting affidavit or verified petition." *Id.* However, a charge of constructive contempt brought by a rule to show cause must be based on an affidavit or verified petition. *Id.* "The failure to support the rule to show cause by an affidavit or verified petition is a fatal defect." *Lynch,* 314 S.C. at 267, 442 S.E.2d at 617.

In *Kennerly,* the pivotal question was whether the contemnor's conduct constituted direct or constructive contempt. Kennerly was a juror in a capital murder trial in which the

defendant was found guilty and received a sentence of life imprisonment rather than the death penalty. *Kennerly*, 331 S.C. at 446–49, 503 S.E.2d at 216–18. The solicitor filed a petition alleging Kennerly was in contempt of court for failing to disclose her relationship with the defendant during *voir dire* and for initiating premature discussions with other jurors in violation of the judge's instructions. *Id.* The trial court found Kennerly guilty of contempt and she appealed, arguing the solicitor's rule to show cause was not based upon a sworn affidavit or a verified pleading. *Id.* at 449–50, 503 S.E.2d at 218. She maintained the contemptuous conduct was not direct contempt because it occurred outside the presence of the court. Likewise, she averred the solicitor's unverified petition was fatal to a charge of constructive contempt. *Id.*

The court found Kennerly's conduct occurred where the jury was required to be, in the jury room and hotel where sequestered, and while the jurors were performing their legal duties. "Because Kennerly's conduct occurred within the sight and hearing of an integral and constituent part of the court, her conduct was 'in the presence of the court' and constituted direct contempt." *Kennerly*, 337 S.C. at 622, 524 S.E.2d at 839. Kennerly's behavior was not constructive contempt, and, therefore, the absence of an affidavit or verified petition was not fatal to the solicitor's action.

### B. Civil v. Criminal Contempt

The determination of whether contempt is civil or criminal depends on the underlying purpose of the contempt ruling. In *Floyd v. Floyd*, we provided a comprehensive review of the differences between civil and criminal contempt:

The major factor in determining whether a contempt is civil or criminal is the purpose for which the power is exercised, including the nature of the relief and the purpose for which the sentence is imposed. The purpose of civil contempt is to coerce the defendant to do the thing required by the order for the benefit of the complainant.

The primary purposes of criminal contempt are to preserve the court's authority and to punish for disobedience of its orders. If it is for civil contempt the punishment is remedial, and for the benefit of the complainant. But if it is for

criminal contempt the sentence is punitive, to vindicate the authority of the court.

An unconditional penalty is criminal in nature because it is solely and exclusively punitive in nature. The relief cannot undo or remedy what has been done nor afford any compensation and the contemnor cannot shorten the term by promising not to repeat his offense. If the relief provided is a sentence of imprisonment, . . . it is punitive if the sentence is limited to imprisonment for a definite period. If the sanction is a fine, it is punitive when it is paid to the court. However, a fine that is payable to the court may be remedial when the contemnor can avoid paying the fine simply by performing the affirmative act required by the court's order. In civil contempt cases, the sanctions are conditioned on compliance with the court's order. The conditional nature of the punishment renders the relief civil in nature because the contemnor can end the sentence and discharge himself at any moment by doing what he had previously refused to do. If the relief provided is a sentence of imprisonment, it is remedial if the defendant stands committed unless and until he performs the affirmative act required by the court's order. . . . Those who are imprisoned until they obey the order, carry the keys of their prison in their own pockets. If the sanction is a fine, it is remedial and civil if paid to the complainant even though the contemnor has no opportunity to purge himself of the fine or if the contemnor can avoid the fine by complying with the court's order.

365 S.C. 56, 75–76, 615 S.E.2d 465, 475–76 (Ct.App.2005) (citing *Poston v. Poston,* 331 S.C. 106, 111–12, 502 S.E.2d 86, 88–89 (1998)).

 The distinction between civil and criminal contempt is critical, because criminal contempt triggers additional constitutional safeguards. Civil contempt must be proved by clear and convincing evidence. *Durlach v. Durlach,* 359 S.C. 64, 71, 596 S.E.2d 908, 912 (2004). In a criminal contempt proceeding, the burden of proof is beyond a reasonable doubt. *Floyd,* 365 S.C. at 76, 615 S.E.2d at 476. Intent for purposes of criminal contempt is subjective, not objective, and must necessarily be ascertained from all the acts, words, and circumstances surrounding the occurrence. *State v. Passmore,* 363 S.C. 568, 572, 611 S.E.2d 273, 275 (Ct.App.2005) (citing

*State v. Bevilacqua,* 316 S.C. 122, 129, 447 S.E.2d 213, 217 (Ct.App.1994)).

In *Bloom v. Illinois,* 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968) the Supreme Court held prosecutions for serious criminal contempts are subject to the jury trial protections of the Sixth Amendment. Subsequently, in *Codispoti v. Pennsylvania,* 418 U.S. 506, 94 S.Ct. 2687, 41 L.Ed.2d 912 (1974), the Supreme Court held criminal defendants sentence to imprisonment of more than six (6) months are entitled to a jury trial. *See Curlee v. Howle,* 277 S.C. 377, 383, 287 S.E.2d 915, 918 (1982); *Passmore,* 363 S.C. at 572, 611 S.E.2d at 275.

 "Incarceration under certain factual circumstances may be included as a component of civil contempt." *Cheap-O's Truck Stop, Inc. v. Cloyd,* 350 S.C. 596, 609, 567 S.E.2d 514, 521 (Ct.App.2002). However, unlike the constitutional protection afforded a criminal contemnor, the United States Supreme Court has held that a civil contempt proceeding resulting in incarceration does not require a jury trial. *Shillitani v. U.S.,* 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966). In *Shillitani,* two witnesses refused to testify before a grand jury after being given immunity. 384 U.S. at 365, 86 S.Ct. 1531. They were sentenced to two years imprisonment for contempt of court with the provision for release if they answered the grand jury's questions. *Id.* The court reasoned the character and purpose of the contempt rendered it civil rather than criminal. *Id.* at 368, 86 S.Ct. 1531. The sentence of imprisonment was conditional, imposed for the obvious purpose of compelling the two grand jury witnesses to obey the court's orders to testify. *Id.* at 370, 86 S.Ct. 1531. "While any imprisonment has punitive and deterrent effects, it must be viewed as remedial if the court conditions the release upon the contemnor's willingness to [obey a court's order]." *Id.* "The conditional nature of the imprisonment, based entirely upon the contemnor's continued defiance, justified holding civil contempt proceedings absent the safeguards of indictment and a jury." *Id.* at 370–71, 86 S.Ct. 1531.

In *Curlee v. Howle* our supreme court followed the *Shillitani* test to determine whether a jury trial was warranted in a contempt proceeding. 277 S.C. at 382, 287 S.E.2d at 917. A father who willfully disregarded a family court order was

sentenced to one year of confinement, suspended upon paying the mother $14,960.43. *Id.* The court first asked whether the contempt was civil or criminal. Looking to the purpose of the contempt finding, it was obviously to compel the contemnor to pay the expenses, not punishment. The court concluded "the conditional nature of the imprisonment, based entirely upon [the father]'s refusal to pay [the mother]'s expenses, justified holding the civil contempt proceeding without a jury trial."

### C. The Case *Sub Judice*

 Husband argues the family court's findings are without evidentiary support. Specifically, Husband contends there is no evidence that he willfully violated the terms of the Temporary Order by barring Wife from entering the marital home, preventing her from retrieving her belongings, and secreting her belongings in another location. Moreover, Husband alleges the family court erred in ordering Husband to return the Ford Mustang and all its parts to Wife. We disagree.

### 1. Marital Property

The record clearly reflects Husband's contemptuous conduct. The Temporary Order allowed and required Wife to remove *all* marital property from the marital home. The Order unequivocally stated: "[Wife] will remove all remaining property from the former residence, to prepare it for sale, and she will store such property at her residence."

Wife and two witnesses attested to the fact Husband willfully interfered with Wife's attempts to effectuate the Temporary Order. Evidence showed the Husband had moved back into the marital home, changed locks, and thwarted Wife's scheduled entry to remove remaining property as ordered. When Wife eventually gained access to the marital home, she discovered the remaining property, including the vintage Ford Mustang, had been removed.

Husband does not dispute the existence of a valid court order requiring Wife to remove remaining property. He claims, instead, that the Temporary Order is unclear, ambiguous, and did not specifically prohibit him from removing property from the marital home. Referring to the relevant

provisions of the Temporary Order, the family court reasoned "it's obvious that property was to be there and all other property other than what's set forth here was to be at that house and she's to take possession of it." "As to the personal property, it is explicit and unequivocal that the wife was to be allowed to retrieve it, she was to get it all."

Husband denied he took any of Wife's property to Savannah, Georgia. He attributed the removal of Wife's property to people helping him move out of the marital home at the end of November. However, Husband did intentionally relocate the Ford Mustang to another location. He insisted the provision in the Temporary Order requiring that "[e]ach party will keep the vehicle in his or her respective possession and pay the expenses of said vehicles" permitted his moving the automobile.

The 1970 Mach I Ford Mustang was basically a chassis, without the engine parts, in the process of being restored. Though at the time of the Temporary Order Husband was not living in the marital home where the automobile was stored, he, nevertheless, claimed possession of all body and interior parts. Wife, on the other hand, maintained the vehicle was part of the "remaining property" that she was ordered to retrieve and store.

 Husband urges the language of the Temporary Order does not accurately reflect the record of the temporary hearing. He claims the agreement at the hearing was that Wife would remove remaining "furnishings," not "remaining property." Husband relies on this discrepancy to argue the Ford Mustang was not part of the property Wife was required to retrieve. However, this argument is not preserved. Husband failed to address the discrepancy between the language at the temporary hearing and in the Order in a post-trial motion. A party must make a post-trial motion where there are inaccuracies in the order or inconsistencies between an oral ruling and a written order. *Grant v. South Carolina Coastal Council*, 319 S.C. 348, 355, 461 S.E.2d 388, 392 (1995); *Pelican Bldg. Ctrs. of Horry–Georgetown, Inc. v. Dutton*, 311 S.C. 56, 60, 427 S.E.2d 673, 675 (1993) (appellant waived issue of nonconformity between oral order and subsequent written order by failing to raise issue below, which could have been

raised through motion to alter or amend judgment after receipt of allegedly nonconforming written order).

The family court ruled the Ford Mustang was included in the remaining property Wife was to remove and ordered Husband to return the Ford Mustang and all its parts to Wife. It is without dispute that the Ford Mustang was stored in the garage of the marital home at the time of the Temporary Order and neither party was in possession of it. Nor was the Ford Mustang the type of operating vehicle described in the Temporary Order that was to be maintained and insured by each party.

Our sole purpose in reviewing the family court's contempt finding here is to ascertain whether evidentiary support existed for the ruling. Accordingly, after a thorough study of the record, we determine evidentiary support existed for finding Husband in contempt and for ordering him to return the Ford Mustang to Wife. The family court was entirely within its discretion in determining the creditability of the witnesses and in assigning weight to their testimony.

Moreover, because the family court determined Husband prevented Wife from retrieving the remaining property, the family court did not err in failing to find Wife in contempt for her non-compliance with the Temporary Order. When a party is unable through no fault of her own to obey an order of the court, she is not to be held in contempt.

## 2. Criminal Contempt Finding

Husband next complains the family court erred in finding him in criminal contempt. In the Amended Order the family court ruled Husband's "act of removal" and "act of barring" Wife constituted criminal contempt that was proven beyond a reasonable doubt. The family court ordered Husband to return Wife's property. His failure to do so would result in a sentence of twelve (12) months incarceration, with the provision that he would be "released by the return of such property."

The family court committed an error in nomenclature by designating the contempt criminal rather than civil. The precedent emanating from the South Carolina and United States Supreme Courts differentiating civil and criminal con-

462

tempt is controlling. *See Curlee v. Howle,* 277 S.C. 377, 287 S.E.2d 915 (1982); *Shillitani v. U.S.,* 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966).

 Without doubt, this is a civil contempt proceeding. The family court's Amended Order does not subject Husband to an unconditional, fixed term of imprisonment.[3] Husband, if imprisoned, could obtain his release by complying with the court's directive; he held the keys to his prison. The contempt ruling was obviously intended to compel Husband's compliance with the requirements of the Temporary Order. Although mistakenly referred to as criminal contempt, substantively, the family court's finding of contempt was civil in nature.

## II. ATTORNEY'S FEES

Husband asserts the family court erred in ordering him to pay two-thirds (2/3) of Wife's attorney's fees because Wife did not prevail in the majority of issues. Additionally, Husband contends the family court erred in failing to consider each party's ability to pay his or her own fees, the beneficial results obtained by the attorney, the parties' respective financial conditions, and the effect of the attorney's fee on the parties' standard of living. We disagree.

In advancing his argument, Husband incorrectly applies the standard for award of attorney's fees in a domestic action. In

---

3. Although the family court issued several contempt rulings and imposed somewhat confusing sentences at the conclusion of the contempt hearing, the final ruling in the Amended Order controls. "It is well settled that a judge is not bound by a prior oral ruling and may issue a written order which is in conflict with the oral ruling." *Corbin v. Kohler Co.,* 351 S.C. 613, 621, 571 S.E.2d 92, 97 (Ct.App.2002) (quoting *Badeaux v. Davis,* 337 S.C. 195, 204, 522 S.E.2d 835, 839 (Ct.App. 1999)). *See also Owens v. Magill,* 308 S.C. 556, 419 S.E.2d 786 (1992) (ruling judge was not bound by prior oral ruling and could issue written order which conflicted with prior oral ruling). "To the extent the written order may conflict with the prior oral ruling, the written order controls." *Parag v. Baby Boy Lovin,* 333 S.C. 221, 226, 508 S.E.2d 590, 592 (Ct.App.1998). "The written order is the trial judge's final order and as such constitutes the final judgment of the court. The final written order contains the binding instructions which are to be followed by the parties." *Ford v. State Ethics Comm'n,* 344 S.C. 642, 646, 545 S.E.2d 821, 823 (2001) (citing Rule 58, SCRCP).

this contempt action, however, a different standard controls the court's analysis.

Courts, by exercising their contempt power, can award attorney's fees under a compensatory contempt theory. *Harris–Jenkins v. Nissan Car Mart, Inc.*, 348 S.C. 171, 178–79, 557 S.E.2d 708, 711–12 (Ct.App.2001). Compensatory contempt seeks to reimburse the party for the costs it incurs in forcing the non-complying party to obey the court's orders. "In a civil contempt proceeding, a contemnor may be required to reimburse a complainant for the costs he incurred in enforcing the court's prior order, including reasonable attorney's fees. The award of attorney's fees is not a punishment but an indemnification to the party who instituted the contempt proceeding." *Poston v. Poston*, 331 S.C. 106, 114, 502 S.E.2d 86, 90 (1998); *Lindsay v. Lindsay*, 328 S.C. 329, 345, 491 S.E.2d 583, 592 (Ct.App.1997) ("A compensatory contempt award may include attorney fees."); *Curlee v. Howle*, 277 S.C. 377, 386–87, 287 S.E.2d 915, 919–20 (1982) ("Compensatory contempt is a money award for the [Wife] when the [Husband] has injured the [Wife] by violating a previous court order.... Included in the actual loss are the costs of defending and enforcing the court's order, including litigation costs and attorney's fees."). The court is not required to provide the contemnor with an opportunity to purge himself of these attorney's fees in order to hold him in civil contempt. *Floyd v. Floyd*, 365 S.C. 56, 76, 615 S.E.2d 465, 476 (Ct.App.2005) (citing *Poston*, 331 S.C. at 111–15, 502 S.E.2d at 88–91). "[T]he award of attorney's fees is not part of the punishment; instead, this award is made to indemnify the party for expenses incurred in seeking enforcement of the court's order." *Id.* at 77, 615 S.E.2d at 476 (quoting *Poston*, 331 S.C. at 111–15, 502 S.E.2d at 88–91).

The family court found Wife necessarily incurred attorney's fees and costs in securing Husband's compliance with the Temporary Order. We discern no abuse of discretion in ordering Husband to pay a portion of those fees and costs.

## CONCLUSION

We hold the evidentiary record supported the family court's finding Husband in civil contempt. The family court did not

abuse its discretion by ordering Husband to return the Ford Mustang and all parts to Wife. Nor did the family court err in failing to find Wife in civil contempt when she, through no fault of her own, failed to comply with the Temporary Order. The family court considered the proper standard for awarding attorney's fees in a contempt action and was within its discretion in awarding fees and costs to Wife.

Accordingly, the Amended Order of the family court is

**AFFIRMED AS MODIFIED.**

THOMAS, J. and CURETON, A.J., concur.