# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

The Gulfstream Cafe, Inc., Respondent,

v.

J. Mark Lawhon, Individually, and Palmetto Industrial Development, LLC, Appellants.

Appellate Case No. 2019-001446

---

Appeal from Georgetown County
Steven H. John, Circuit Court Judge

---

Opinion No. 5936
Heard March 16, 2022 – Filed August 10, 2022

---

**AFFIRMED**

---

Henrietta U. Golding, of Burr & Forman LLP, of Myrtle Beach, for Appellants.

George W. Redman, III, of Bellamy, Rutenberg, Copeland, Epps, Gravely & Bowers, P.A., of Myrtle Beach; Sean Matthew Foerster, of Rogers Townsend LLC, of Columbia; and Simon H. Bloom and Adam D. Nugent, both of Atlanta, Georgia, all for Respondent.

---

**LOCKEMY, A.J.:** Palmetto Industrial Development, LLC (Palmetto) and J. Mark Lawhon (Mark; collectively, Appellants) appeal the circuit court's order finding them in criminal contempt for parking a golf cart in front of The Gulfstream Café, Inc.'s (Gulfstream's) delivery gate, which violated a permanent injunction and impacted Gulfstream's use of a joint, non-exclusive easement. On

appeal, Appellants argue the circuit court erred because (1) parking the golf cart in a parking spot did not violate the injunction; (2) Appellants presented evidence that undermined Gulfstream's claimed use of the delivery gate and the circuit court's finding of a willful violation; (3) the circuit court should not have denied Appellants' Rule 59(e), SCRCP, motion based on Rule 59(g), SCRCP; and (4) the circuit court's order was insufficient.  We affirm.

## FACTS/PROCEDURAL HISTORY

This appeal is another episode in a series of disputes between Appellants and Gulfstream involving a joint, non-exclusive easement.[1]  By way of background, Gulfstream is a restaurant located in Murrells Inlet and is part of the Marlin Quay Marina Development.  Prior to November 2016, a store, a restaurant called the Marlin Quay Marina Bar & Grill, and a marina were located on the lot adjacent to Gulfstream.  The restaurant was demolished in November 2016.  Palmetto owns the marina, store, parking lot, and property where the restaurant was, and Mark owns Palmetto.  Chris Lawhon (Chris), Mark's son, was the manager of the marina's restaurant.

Gulfstream possesses four joint, non-exclusive easements that were issued in 1986 and 1990 by Palmetto's predecessor—Marlin Quay Marina Corporation.  The 1990 easement intended to clarify Gulfstream's rights.  Specifically, Gulfstream retained:

> A non-exclusive perpetual easement appurtenant to the premises of [Gulfstream] hereinafter described for the full and free right of ingress and egress on, over and across the following described property of [Marlin Quay Marina Corporation], together with the rights of vehicular parking on and vehicular and pedestrian access to, all in accordance with all governmental rules, regulations, ordinances or laws, the premises of the [Marlin Quay Marina Corporation] hereinafter described, and also for the purpose of maintenance, repair, alteration and/or improvements to [Gulfstream's] hereinafter described property.  It is anticipated by the parties that while they will each have joint and non-exclusive use at all times of the area covered by this easement that the [Marlin Quay Marina Corporation] will utilize the premises primarily during the daytime regular business

[1] *See also* App. Case No. 2019-000885.

> hours of [Marlin Quay Marina Corporation] and [Gulfstream] will utilize the premises primarily in the evening regular business hours of [Gulfstream.]

In 2016, the saga of disputes between Appellants and Gulfstream unfolded over Appellants' plans to demolish their own building and rebuild a larger building that would have been on stilts and evidently extended over the parking lot. On November 16, 2016, Gulfstream filed suit against Appellants, alleging (1) intentional interference with its easement rights; (2) trespass and nuisance; and (3) forcible entry, detainer, and waste. Gulfstream obtained a temporary restraining order and temporary injunction, prohibiting Appellants from "interfering with [Gulfstream's] perpetual easement rights to use the [p]arking [l]ot." During the hearing on the temporary injunction, the parties were warned about contempt because the court believed that one of the parties was "intentionally misleading" about what was happening.

The relationship between Gulfstream and Appellants continued to sour, and Gulfstream moved for contempt. In May 2017, Mark was held in criminal contempt for interfering with Gulfstream's easement rights during a fishing tournament and for calling law enforcement to remove Gulfstream's window washers on two occasions. The circuit court ordered Mark to pay a $3,000 fine or serve thirty days in jail for the incidents with the window washers.

In June 2018, Gulfstream and Appellants proceeded to trial before the circuit court and a jury. The jury found for Gulfstream based on Appellants' "interference with [Gulfstream's] easement" and awarded Gulfstream $1,000. On June 12, 2018, the same day as the jury verdict, the circuit court entered a permanent injunction: "[Appellants] are enjoined from preventing [Gulfstream] from enjoying the right[s] granted to it in the recorded nonexclusive joint easement. [Appellants] are restrained and may not expand the outside boundaries of any new building beyond those previously used. The [c]ourt is specifically not talking about height, only the outside boundaries." On June 22, 2018, Gulfstream filed a Rule 59(e) motion to clarify the injunction, and Appellants responded.

One month later, in July 2018, Gulfstream moved to hold Appellants in criminal contempt because Chris parked a golf cart in front of Gulfstream's delivery gate on "at least four (4) separate occasions."[2] Included in the contempt motion were

---

[2] Gulfstream later raised other matters about lights in the parking lot, a delivery truck, and boat trailers; however, the circuit court did not find Appellants in contempt on these matters, and we do not discuss them on appeal.

photos of a U.S. Foods truck that was unable to access Gulfstream's delivery gate. Gulfstream also provided an affidavit from Jef Kirk, a manager for Gulfstream, and included pictures, text messages, and a statement from a delivery driver to support Kirk's affidavit. Specifically, Kirk alleged Appellants were "intentionally and repeatedly interfering with" Gulfstream's easement rights:

> (1) on July 11, 2018, Chris parked the golf cart in front of the delivery gate and did not move the cart until the evening of July 12, 2018;
> (2) on July 13, 2018, the golf cart was back again and blocked a U.S. Foods' delivery truck; Kirk texted Chris, asking him to move the cart; and the delivery driver did the same;
> (3) on July 15, 2018, the golf cart was parked in the early morning to block the delivery gate;
> (4) on July 17, 2018, Kirk reviewed security camera footage and saw that Chris parked the golf cart in front of the delivery gate and walked in the opposite direction of Appellants' business; Kirk texted Chris, asking him to move the cart; and
> (5) on July 19, 2018, the golf cart was again blocking the gate.

According to Kirk, "[e]ach time the . . . golf cart was parked in front of Gulfstream's delivery gate, there were numerous other parking spaces available." Kirk emphasized that when the vendors did not use the delivery gate, the process was "extremely inefficient and cause[d] excess wear and tear to the floors." Kirk stated he added a sign to the delivery gate on July 18, 2018, asking patrons not to block the gate from 10:00 a.m. to 4:00 p.m.

On July 27, 2018, the circuit court amended its permanent injunction:

> [Appellants] are enjoined from preventing [Gulfstream] from enjoying the right[s] granted to it in the recorded nonexclusive joint easement. [Appellants] are restrained and may not expand the outside boundaries of any new building beyond those previously used. The outside boundaries specifically are the outside boundaries of the old building, which was depicted on the 1985 Plat recorded at Plat Book 6, Page 214 of the Georgetown County real property records and was demolished by

[Appellants] in November 2016.  The outside boundaries do not include any outbuildings, fixtures, concrete pads, dumpsters, or other accessories.  As a result, any new building must be located on the same footprint as the old building.  The [c]ourt is specifically not talking about height, only the outside boundaries.

On August 6, 2018, Appellants moved to alter or amend the circuit court's July 27, 2018 order, arguing (1) the new order created confusion and uncertainty, (2) an injunction should not have been granted because the jury awarded monetary relief, (3) the amended permanent injunction enlarged the easement, and (4) other issues related to the building's construction.

On August 20, 2018, Appellants filed an opposition to the contempt motion, arguing Appellants did not violate the court's order when Chris parked the golf cart in a parking spot in front of the delivery gate.  Additionally, Appellants emphasized Gulfstream's employees and others parked in the same spot and Gulfstream's vendors did not always use the delivery gate even when the gate was available.  In support of their position, Appellants attached an affidavit from Chris and photographs.  Chris stated (1) Gulfstream's employees park in front of the delivery gate; (2) he did not receive any communications from Kirk or the vendors until after July 19, 2018; (3) he did not see Gulfstream's sign about not parking in the spot; (4) he parked away from the marina in the mornings to allow customers and captains to park closer to the restaurant and store; and (5) he had not parked in the spot since Gulfstream filed the contempt motion.  Mark also filed an affidavit, stating Gulfstream allowed vendors to use other access points beyond the delivery gate and asserted Gulfstream's employees parked in front of the delivery gate as well.

Gulfstream filed a reply in support of contempt and attached a second affidavit from Kirk.  Kirk noted (1) he previously contacted employees of the marina to ask Chris to move the golf cart; (2) on July 27, 2018, Mark parked his SUV to block the delivery gate; (3) Kirk and Gulfstream's staff had started parking in front of the delivery gate to ensure their cars could be moved for when deliveries arrived; and (4) some deliveries came through the front door, but the food deliveries generally came through the delivery gate because there were generally more than 100 boxes of food.  Appellants also filed a second affidavit from Chris.

On November 14, 2018, the circuit court heard Appellants' motion to amend the July 27, 2018 order, which it denied,[3] and Gulfstream's contempt motion. According to Appellants' counsel, Chris left the golf cart overnight on one occasion because it was raining; the time Chris walked away from the marina on the video footage was to pick up something he dropped; and after the 2018 trial, Chris blocked Kirk's phone number. The same day, the circuit court issued a Form 4 order, finding Appellants "engaged in criminal contempt of court by deliberate and intentional acts by placement of a golf cart which interfered with the proper use of the non-exclusive easement in this matter and was in direct violation of the [c]ourt's previous order." Thus, the circuit court fined Appellants $5,000.

On November 21, 2018, Appellants filed a Rule 59(e) motion as to the contempt order. Appellants failed to provide a copy of the Rule 59(e) motion to the circuit court judge within ten days of filing the motion. On December 13, 2018, Appellants appealed the circuit court's orders involving the permanent injunction. *See* App. Case No. 2018-002213. On February 1, 2019, our court dismissed based on Appellants' desire to withdraw their appeal. *See* App Case No. 2018-002213. Thereafter, on June 10, 2019, the circuit court instructed the parties to provide it with briefs on whether to consider Appellants' motion to reconsider its contempt order. The parties provided briefs to the circuit court.

The circuit court denied Appellants' Rule 59(e) motion because (1) the circuit court was not given the motion pursuant to Rule 59(g) and (2) on the merits, the circuit court found it properly ruled. This appeal followed.

## ISSUES ON APPEAL

1. Did the injunction prohibit Appellants from parking a golf cart in a designated parking spot when the easement was joint and non-exclusive?

2. Did the evidence presented demonstrate beyond a reasonable doubt that Appellants violated the prior order?

3. Did the circuit court wrongly deny the motion to reconsider as untimely?

4. Did the circuit court's order provide a sufficient explanation for its decision?

## STANDARD OF REVIEW

---

[3] The July 27, 2018 order is not on appeal before this court.

"A determination of contempt ordinarily resides in the sound discretion of the [circuit] court." *Rhoad v. State*, 372 S.C. 100, 104, 641 S.E.2d 35, 37 (Ct. App. 2007). "On appeal, a decision regarding contempt should be reversed only if it is without evidentiary support or the [circuit court] has abused [its] discretion." *Stone v. Reddix-Smalls*, 295 S.C. 514, 516, 369 S.E.2d 840, 840 (1988). "An abuse of discretion occurs when the ruling is based on an error of law or a factual conclusion without evidentiary support." *Historic Charleston Holdings, LLC v. Mallon*, 381 S.C. 417, 434, 673 S.E.2d 448, 457 (2009).

## LAW/ANALYSIS

Appellants argue the circuit court erred by finding them in criminal contempt. First, Appellants aver the injunction was not specific as to prohibiting them from using any space in their joint, non-exclusive easement, Chris's conduct was permissible, and Chris's "motivation for parking the golf cart near the delivery gate [wa]s irrelevant." Second, Appellants contend they presented evidence that undermined the need to use the delivery gate because vendors used other access points. Appellants further argue that when Chris parked the cart and walked away on one occasion, he was picking something up, and this did not constitute a willful violation. Third, Appellants assert that when the circuit court instructed the parties to brief their issues, the court's actions were "tantamount to forgiving any" Rule 59(g) violation. Finally, Appellants argue the circuit court's order was insufficient. We disagree.

"Contempt results from the willful disobedience of an order of the court." *Miller v. Miller*, 375 S.C. 443, 454, 652 S.E.2d 754, 759 (Ct. App. 2007) (quoting *Bigham v. Bigham*, 264 S.C. 101, 104, 212 S.E.2d 594, 596 (1975); *see also* S.C. Code Ann. § 14-5-320 (2017) ("The circuit court may punish by fine or imprisonment, at the discretion of the court, all contempts of authority in any cause or hearing before the same."). "A willful act is one which is 'done voluntarily and intentionally with the specific intent to do something the law forbids, or with the specific intent to fail to do something the law requires to be done; that is to say, with bad purpose either to disobey or disregard the law.'" *Miller*, 375 S.C. at 454, 652 S.E.2d at 759-60 (quoting *Widman v. Widman*, 348 S.C. 97, 119, 557 S.E.2d 693, 705 (Ct. App. 2001)).

"In a proceeding for contempt for violation of a court order, the moving party must show the existence of a court order and the facts establishing the respondent's noncompliance with the order." *Id.* at 454, 652 S.E.2d at 760 (quoting *Hawkins v. Mullins*, 359 S.C. 497, 501, 597 S.E.2d 897, 899 (Ct. App. 2004). "[B]efore a court may find a person in contempt, the record must clearly and specifically

reflect the contemptuous conduct." *Id.* (alteration in original) (quoting *Widman*, 348 S.C. at 119, 557 S.E.2d at 705). "Once the moving party has made out a prima facie case, the burden then shifts to the respondent to establish his or her defense and inability to comply with the order." *Id.* (quoting *Widman*, 348 S.C. at 120, 557 S.E.2d at 705).

"It is within the [circuit] court's discretion to punish by fine or imprisonment all contempts of authority before the court." *Id.* (quoting *Brandt v. Gooding*, 368 S.C. 618, 628, 630 S.E.2d 259, 264 (2006)). "In addition, courts have the inherent power to punish for offenses that are calculated to obstruct, degrade, and undermine the administration of justice." *Id.* at 455, 652 S.E.2d at 760 (quoting *Brandt*, 368 S.C. at 628, 630 S.E.2d at 264). "The primary purposes of criminal contempt are to preserve the court's authority and to punish for disobedience of its orders." *Id.* at 456, 652 S.E.2d at 761 (quoting *Floyd v. Floyd*, 365 S.C. 56, 75, 615 S.E.2d 465, 475 (Ct. App. 2005). "In a criminal contempt proceeding, the burden of proof is beyond a reasonable doubt." *Id.* at 457, 652 S.E.2d at 761. "Intent for purposes of criminal contempt is subjective, not objective, and must necessarily be ascertained from all the acts, words, and circumstances surrounding the occurrence." *Id.*

The circuit court did not abuse its discretion in finding Appellants in criminal contempt. *See Stone*, 295 S.C. at 516, 369 S.E.2d at 840 ("On appeal, a decision regarding contempt should be reversed only if it is without evidentiary support or the [circuit court] has abused [its] discretion."); *Miller*, 375 S.C. at 457, 652 S.E.2d at 761 ("Intent for purposes of criminal contempt is subjective, not objective, and must necessarily be ascertained from all the acts, words, and circumstances surrounding the occurrence."); *id.* ("In a criminal contempt proceeding, the burden of proof is beyond a reasonable doubt.").

Here, the circuit court issued a permanent injunction after the 2018 trial—later clarified to reference a plat—prohibiting Appellants from interfering with Gulfstream's joint, non-exclusive easement rights. The 1990 easement expressly provided that Gulfstream had an easement "for the full and free right of ingress and egress on, over and across" the property. We acknowledge the easement was joint and non-exclusive, but based on Kirk's affidavits and supporting exhibits, we find Chris's conduct was calculated to undermine the circuit court's injunction that permitted Gulfstream to use its easement. *See Miller*, 652 S.E.2d at 455, 652 S.E.2d at 760 ("[C]ourts have the inherent power to punish for offenses that are calculated to obstruct, degrade, and undermine the administration of justice." (quoting *Brandt*, 368 S.C. at 628, 630 S.E.2d at 264)); *id.* at 456, 652 S.E.2d at 761 ("The primary purposes of criminal contempt are to preserve the court's authority

and to punish for disobedience of its orders." (quoting *Floyd*, 365 S.C. at 75, 502 S.E.2d at 475)). Additionally, it would be illogical to accept Appellants' implicit argument that they could park and block the delivery gate as much as they wanted to because Gulfstream only had a joint, non-exclusive easement.

Further, we acknowledge Appellants and Chris contend they were not intentionally violating the circuit court's order and Chris was simply using a parking spot. However, this was a factual determination the circuit court had to confront. Thus, even if we disagreed with the circuit court's ruling, we would still be bound by our standard of review, and there is sufficient evidence in the record to support the circuit court's finding. *See Stone*, 295 S.C. at 516, 369 S.E.2d at 840 ("On appeal, a decision regarding contempt should be reversed only if it is without evidentiary support or the [circuit court] has abused [its] discretion."); *Rhoad*, 372 S.C. at 104, 641 S.E.2d at 37 ("A determination of contempt ordinarily resides in the sound discretion of the [circuit] court.").[4] We also understand how the circuit court likely discounted Appellants' contention that vendors did not always use the delivery gate; it is reasonable that the type of delivery would govern whether the vendors used the stairs or the delivery gate that is functionally a shipping dock.

Moreover, we disagree with Appellants' assertion that the circuit court's order was insufficient because we do not know *why* the circuit court discredited their versions of events. The circuit court plainly stated in its first contempt order—which was later turned into a formal order—that Appellants "engaged in criminal contempt of court by deliberate and intentional acts by placement of a golf cart which interfered with the proper use of the non-exclusive easement in this matter and was in direct violation of the [c]ourt's previous order." After reviewing all of the materials, we come to the same conclusion that the circuit did and would also find Appellants in contempt. Accordingly, we affirm the circuit court's order.[5]

Because we find the circuit court properly ruled on the merits, we need not address Appellants' arguments regarding Rule 59(g) and law of the case. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598

---

[4] Appellants suggest we should not defer to the circuit court's implicit credibility findings because at the contempt hearing, only the attorneys argued and affidavits were submitted. However, we give little weight to this argument. After all, the circuit court judge who ruled on the contempt action was the same judge who sat through the 2018 trial; thus, the circuit court was very familiar with these parties.
[5] At oral arguments, the parties informed our court that they were again going to trial the Monday after oral arguments.

(1999) (declining to address remaining issues when disposition of a prior issue is dispositive).

**CONCLUSION**

Based on the foregoing, we affirm the circuit court's finding of contempt.

**AFFIRMED.**

**GEATHERS and HILL, JJ., concur.**