543 S.E.2d 271

**Denise SMITH–COOPER, Respondent,**

**v.**

**James L. COOPER, Jr., Appellant.**

**No. 3295.**

Court of Appeals of South Carolina.

Heard Dec. 13, 2000.

Decided Feb. 12, 2001.

James G. Long, III, of Nexsen, Pruet, Jacobs & Pollard, of Columbia, for appellant.

Frank B. Register, Jr., of Cooper, Register & Krajack, of Lexington, for respondent.

HEARN, Chief Judge:

James L. Cooper, Jr. (Husband) appeals from a family court order finding the provisions of a property settlement and

support agreement nonmodifiable and holding him in contempt for failure to comply with the provisions of the agreement. We affirm in part and reverse and remand.

Husband and Denise Smith–Cooper (Wife) were married in 1987 and divorced on September 26, 1994. On August 26, 1994, the parties executed a property settlement and support agreement which the family court approved and incorporated into the divorce decree. The agreement obligates Husband to pay $260 in alimony to Wife every other week, as well as numerous other expenses for Wife, including: the mortgage on Wife's residence, assistance with the costs of repairs and maintenance on Wife's residence, land option payments, automobile insurance, health insurance, uninsured medical expenses, and life insurance.[1] The agreement further provides:

> As any of the above expenses are paid in full or the obligation no longer exists, Husband is no longer obligated to make these payments and the total amount of his monthly obligation to Wife will be reduced accordingly.
>
> . . .
>
> If at any time Wife receives social security disability benefits or becomes employed in a full time capacity, all amounts received from the sources, after 6 months of such receipt, shall be reduced from Husband's total obligation at that time by the amount Wife receives from the sources.... The ultimate goal of both parties is that at some future time, Wife will become totally self-sufficient and will not require any assistance from Husband.

The parties also expressly agreed that "this agreement shall not be modifiable by any court without the consent of both parties" and that all modifications must be in writing and signed by both parties.

In October 1995, Wife applied for social security disability benefits, claiming she became disabled in January 1991, due to irritable bowel syndrome and depression. In February 1996, the Social Security Administration denied her application. She did not appeal. After the commencement of this action,

---

1. Husband asserted in his brief and Wife's counsel agreed at oral argument that Husband had been paying Wife $17,000 to $18,000 per year pursuant to the agreement.

Wife hired an attorney to pursue a second claim for social security benefits. In October 1998, the Social Security Administration again denied her claim.

In January 1998, Husband lost his job. He received two weeks severance pay, payment for his accrued sick leave, and unemployment benefits in the amount of $224.00 per week for several months. Wife's health insurance, which was acquired through Husband's employment, expired in January 1998.

Wife petitioned the family court for a rule to show cause why Husband should not be held in contempt for failure to comply with the support provisions of the agreement. Prior to the hearing, Husband brought an action against Wife for modification or termination of his alimony obligation.

The consolidated cases were tried before the family court on January 4, 5, and 6, 1999. By order dated March 11, 1999, the family court found the agreement was not modifiable and held Husband in contempt. The court ordered Husband (1) to continue paying Wife's mortgage and be responsible for the upkeep, maintenance and repairs on the property, and (2) to continue paying Wife alimony and satisfy an alimony arrearage of $1,720.

The court further found Husband allowed Wife's health insurance to lapse without informing her of her right to obtain COBRA coverage from his former employment. The court ordered Husband to pay all of Wife's outstanding medical and dental expenses, including reimbursing her for medical bills she paid and for outstanding bills due. In addition, the family court ordered Husband to obtain health insurance for Wife, provided that his liability for her uninsured medical expenses would continue until he obtained insurance coverage on her behalf. Additionally, the family court directed Wife to undergo psychiatric counseling "in order that she overcome her medical and psychological problems in an effort to become employed." The court ordered Husband to contribute $70 every other week to Wife for the cost of counseling. Finally, the family court awarded Wife $7,500 in attorney fees. The family court denied Husband's post-trial motion for reconsideration. This appeal followed.

## SCOPE OF REVIEW

██ In appeals from the family court, this court has the authority to find facts in accordance with its own view of the preponderance of the evidence. *Rutherford v. Rutherford,* 307 S.C. 199, 204, 414 S.E.2d 157, 160 (1992). This broad scope of review does not, however, require this court to disregard the findings of the family court. *Stevenson v. Stevenson,* 276 S.C. 475, 477, 279 S.E.2d 616, 617 (1981). Neither are we required to ignore the fact that the trial judge, who saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Cherry v. Thomasson,* 276 S.C. 524, 525, 280 S.E.2d 541, 541 (1981).

## DISCUSSION

### I. Judicial Modification of Agreement

Husband asserts the family court erred in finding the agreement may not be judicially modified. We agree.

██ Generally, where an agreement is clear and capable of legal construction, the court's only function is to interpret its lawful meaning and the intent of the parties as found within the agreement. *Bogan v. Bogan,* 298 S.C. 139, 142, 378 S.E.2d 606, 608 (Ct.App.1989). However, where an agreement is ambiguous, the court should seek to determine the parties' intent. *Ebert v. Ebert,* 320 S.C. 331, 338, 465 S.E.2d 121, 125 (Ct.App.1995); *Mattox v. Cassady,* 289 S.C. 57, 60–61, 344 S.E.2d 620, 622 (Ct.App.1986). A contract is ambiguous when it is capable of more than one meaning or when its meaning is unclear. *Bruce v. Blalock,* 241 S.C. 155, 160, 127 S.E.2d 439, 441 (1962); 17A Am.Jur.2d *Contracts* § 338, at 345 (1991).

██ Here, one portion of the agreement reads: "The parties agree that this agreement shall not be modifiable by any court without the consent of both parties." However, the alimony portion of the agreement clearly and unambiguously envisions that Husband's alimony obligation will be reduced as Wife receives social security disability benefits or becomes employed. Moreover, the alimony provision states: "The ultimate goal of both parties is that at some future time, Wife will become totally self-sufficient and will not require any assistance from Husband."

The family court judge found he could not modify the alimony provisions of the agreement because of the clause relating to non-modifiability. However, this construction of the agreement completely eviscerates the portions of the agreement concerning the reduction of Husband's alimony obligation as Wife receives social security disability benefits or becomes employed. It is clear that the parties intended their agreement regarding alimony would be modified downward as Wife became more self-sufficient. In fact, during the hearing to approve the parties' agreement, Wife's counsel stated that Husband would continue to pay alimony "until disability kicks in or until she becomes capable of going back to work." In the face of such clearly expressed intent, we hold it was error for the family court judge to rule that he was without authority to modify the alimony provisions of the agreement.

The family court's ruling regarding non-modifiability places Husband in the untenable position of being unable to obtain relief so long as Wife neither receives social security disability benefits nor becomes gainfully employed. It also encourages Wife to exert little or no effort to become employed. Our reading of the agreement convinces us that it specifically and unequivocally provided for the downward modification of Husband's alimony obligation.

■ While the family court refused Husband's request for modification, it *increased* Husband's alimony obligation beyond that contemplated by the parties' agreement. This was error. The agreement provided that, with respect to the marital residence, "Husband will assist in paying costs of maintenance and repairs." The family court established a procedure whereby Wife was to provide Husband with estimates from contractors concerning any repairs to the property, and further provided that if Husband did not find a contractor himself within thirty days, he "shall then be required to pay the estimated costs to the contractor upon completion of the job." Thus, despite the family court's ruling that the agreement was non-modifiable, the court modified the agreement by requiring Husband to be 100% responsible for the payment of the repairs. This was clearly error.

Under our reading of the agreement, the parties contemplated that any modification to the agreement would be a

downward modification of Husband's obligations, not an upward modification. The family court's order is reversed to the extent it provides a procedure to facilitate Husband's assistance with repairs and maintenance of the home and requires Husband to be fully responsible for these expenses.

█ Likewise, the family court's mandate that Husband pay Wife $70 every other week towards the cost of Wife's counseling was erroneous. In the provision relating to Husband's maintenance of health insurance for the benefit of Wife, the agreement provides that "Husband will be responsible for all deductible amounts incurred by Wife on the applicable health insurance policy for any physical exam, any diagnostic proceeding and any necessary treatment up to a total amount equal to the insurance deductible per year." Although the agreement provides that "Husband is to be responsible for uncovered medical, dental and prescriptions," counseling is not included within this language. The family court's order thus impermissibly enlarges Husband's alimony obligation to Wife, something which was not contemplated by the parties' agreement. Accordingly, that portion of the order is reversed.

## II. Imputation of Income

Husband also asserts the family court erred in failing to impute income to Wife. He alleges Wife has acted in bad faith and that her "delay and unwillingness to pursue her claim has irreparably prejudiced her ability to acquire disability benefits as contemplated by the parties." While we do not reach Husband's allegations of bad faith, we agree that the family court failed to consider the question of Wife's employability.

Since the time of the agreement, Wife asserts she has unsuccessfully sought employment in her field of expertise on at least three occasions, and has twice attempted to work outside that field. At the time of trial, Wife was being treated for depression, chronic fatigue syndrome, irritable bowel syndrome, and gastro-esophageal reflux disease. She also has the Epstein–Barr virus, which causes symptoms similar to mononucleosis in adults. Her conditions are treated with three antidepressants and medications prescribed to treat anxiety, abdominal discomfort, abdominal spasms and acidity, diarrhea, and nausea. Dr. Ronald Steen testified that a

person suffering from these medical disorders would generally not be able to maintain employment. Dr. Steen opined Wife would never be able to work outside her home due to her illnesses.

Husband presented the testimony of Joel Leonard, a vocational consultant, regarding Wife's capacity to work. Leonard based his opinion on his review of Wife's medical records, her social security file, and her deposition testimony. Leonard testified Wife could perform at a level of employment with a median gross income of $17,160. However, he stated she needed vocational rehabilitation and would benefit from mental health counseling. Apparently because the family court thought to do so would constitute an impermissible modification of the parties' agreement, the court refused to impute income to Wife.

The Social Security Administration found Wife was not disabled and refused her disability benefits. However, Wife claims she is disabled and therefore cannot secure employment. Quite simply, Wife cannot have it both ways. In other words, she cannot accept the decision of the Social Security Administration that she is not disabled and yet claim she is too disabled to work, forcing Husband to continue providing her full support. *See Ebert*, 320 S.C. at 338–39, 465 S.E.2d at 125–26 (finding that Husband is not required to continue paying Wife's mortgage where the parties intended Wife would sell the home but settlement agreement does not specify when she must sell it). Taking our own view of the preponderance of the evidence, we believe that Wife is capable of some employment as Joel Leonard testified. However, because there was not a full evidentiary hearing on Wife's employability, we remand this issue to the family court for a hearing with instructions to impute income to Wife and to reduce Husband's alimony obligation accordingly, pursuant to the terms of the parties' agreement. *See Micheau v. Micheau*, 285 S.C. 527, 529, 331 S.E.2d 348, 349 (1985) (stating that disputed factual issue must be remanded back to the family court for factual findings); *Condon v. Condon*, 280 S.C. 357, 360, 312 S.E.2d 588, 589–90 (Ct.App.1984) (finding that the court of appeals must remand issues to the family court for a hearing if the record is insufficient for adequate review on appeal).

### III. Health Insurance

 Husband next contends his obligation to provide Wife with medical insurance and to pay her uninsured medical expenses terminated when he lost his job in January 1998. We disagree.

Paragraphs 4 and 13 of the parties' agreement set forth Husband's obligation to provide health insurance to Wife and pay her uninsured medical costs. The relevant language reads as follows:

4. Husband will be responsible for all deductible amounts incurred by Wife on the applicable health insurance policy for any physical exam, any diagnostic proceeding and any necessary treatment up to a total amount equal to the insurance deductible per year.

Husband agrees to pay to Wife, on a monthly basis, as alimony, the following bills to wit;

. . .

F) Health insurance covering Wife as an insured, payable directly to insurance company. Husband to be responsible for uncovered medical, dental and prescriptions.

. . .

13. Husband shall maintain at his expense a group major medical hospitalization and health insurance policy with Wife listed as an insured thereof through his place of employment. This obligation shall continue until Wife becomes self sufficient as set out above.

Husband was employed at the time of the agreement and was insured under a company insurance policy. He later became employed at H2Options and continued to insure Wife under that company's policy. Wife's coverage under Husband's policy at H2Options expired in January 1998 when Husband's employment was terminated.

 From a plain reading of the agreement, we cannot conclude that Husband's obligation to provide Wife with health insurance terminated upon his unemployment. "Where an agreement is clear and capable of legal construction, the

court's only function is to interpret its lawful meaning and the intention of the parties as found within the agreement and give effect to it." *Ebert,* 320 S.C. at 338, 465 S.E.2d at 125. The court must enforce an unambiguous contract according to its terms regardless of its wisdom or folly, apparent unreasonableness, or the parties' failure to guard their rights carefully. *Ellis v. Taylor,* 316 S.C. 245, 248, 449 S.E.2d 487, 488 (1994). The agreement unambiguously obligates Husband to provide Wife with medical insurance coverage regardless of his employment. However, depending upon the family court's decision regarding the amount of income to impute to Wife, Husband's obligation to continue paying Wife's insurance may decrease according to the parties' agreement.

## IV. Contempt

Husband contends the family court erred in finding him in contempt for failing to comply with the provisions of the agreement. We agree.

Wife conceded in her testimony that the mortgage obligation on her home was current at the time of trial. Further, she testified the applicable life insurance premiums were paid at the time of trial and had never lapsed. The family court found Wife abandoned her claims for automobile expenses and the land upon which the agreement obligated Husband to make option payments. Wife has not appealed these findings and they are therefore the law of the case. *Buckner v. Preferred Mut. Ins. Co.,* 255 S.C. 159, 161, 177 S.E.2d 544, 544 (1970) (holding an unchallenged ruling, "right or wrong, is the law of this case and requires affirmance").

Our reading of the record and order reveals the family court found Husband in contempt for failure to maintain Wife's health insurance, failure to pay Wife's medical expenses, and failure to pay spousal support.

"Contempt results from the willful disobedience of a court order." *Henderson v. Henderson,* 298 S.C. 190, 197, 379 S.E.2d 125, 129 (1989). A willful act is defined as one "done voluntarily and intentionally with the specific intent to do something the law forbids, or with the specific intent to fail to do something the law requires to be done." *Spartanburg County Dep't of Soc. Servs. v. Padgett,* 296 S.C. 79, 82–83, 370

S.E.2d 872, 874 (1988) (quoting Black's Law Dictionary 1434 (5th Ed.1979)). Where a contemnor is unable, without fault on his part, to obey an order of the court, he is not to be held in contempt. *Hicks v. Hicks*, 280 S.C. 378, 381, 312 S.E.2d 598, 599 (Ct.App.1984); *see also Moseley v. Mosier*, 279 S.C. 348, 351, 306 S.E.2d 624, 626 (1983) (parent who is unable to make child support payments as ordered is not in contempt).

█ We find Husband's failure to comply with the agreement was not willful. The testimony at trial reveals Husband's failure to comply with his support obligations under the agreement was due to his financial inability. It is uncontested Husband underwent periods of involuntary unemployment in 1998. During these periods, Husband continued to fulfill his support obligations and to make mortgage payments on Wife's home to the extent he was financially able. Moreover, Husband was employed at the time of trial and expressed a willingness to repay the accumulated arrearage in accordance with a judicially ordered schedule.[2] Thus, we hold the facts and circumstances of this case do not support a finding of contempt.

## V. Attorney Fees

Husband argues the family court erred in awarding Wife $7,500 in attorney fees. We agree.

[14] The factors to be considered in awarding reasonable attorney fees and costs include: (1) the nature, extent, and difficulty of the case; (2) the time necessarily devoted to the case; (3) the professional standing of counsel; (4) the contingency of compensation; (5) the beneficial results obtained; and (6) the customary legal fees for similar services. *Glasscock v. Glasscock*, 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991).

█ Particularly in light of our disposition regarding the family court's error in refusing to impute income to Wife and its finding of contempt, we hold the award to Wife of $7,500 in

---

2. We also remand the issue of Husband's request for a $360 credit against the amount of his arrearage. Husband claims that he made a $360 payment on the Thursday prior to the trial of this case, which had not been received by Wife as of the date of trial.

attorney fees was excessive. Nonetheless, we recognize Wife incurred expenses instituting these proceedings. Based on our own view of the facts of this case, we reduce the award of attorney fees to $2,500.

For the foregoing reasons, the decision of the family court is

**AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.**

ANDERSON and STILWELL, JJ., concur.