**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

Paresh Shah, M.D. and Paresh Shah, M.D., P.A.,
Appellants,

v.

Palmetto Health Alliance, f/k/a Richland Memorial
Hospital, Respondent.

Appellate Case No. 2009-122786

―――――――――――

Appeal From Richland County
Doyet A. Early, III, Circuit Court Judge

―――――――――――

Unpublished Opinion No. 2012-UP-475
Heard March 15, 2012 – Filed August 1, 2012

―――――――――――

**AFFIRMED**

―――――――――――

Joel W. Collins, Jr. and Amy L. Neuschafer, both of
Collins & Lacy, PC, of Columbia; Robert F. Goings, of
Goings Law Firm, LLC, of Columbia, for Appellants.

Robert L. Widener, Jane W. Trinkley, and Celeste Tiller
Jones, all of McNair Law Firm, PA, of Columbia; I.S.
Leevy Johnson and William T. Toal, both of Johnson
Toal & Battiste, PA, of Columbia; Frederick A.
Crawford, of Richardson Plowden & Robinson, PA, of
Columbia, for Respondent.

―――――――――――

**PIEPER, J.:**  Appellants Paresh Shah, M.D. and his professional association appeal from an order of the circuit court denying three petitions for rule to show cause (collectively "the Petitions").  All three petitions alleged Respondent Palmetto Health Alliance f/k/a Richland Memorial Hospital (the Hospital) was in contempt of a 2001 confidential consent order of settlement (the Consent Order) and a 2003 supplemental order (the Supplemental Order) (collectively "the Settlement Orders").  Dr. Shah argues the trial court erred by finding the Hospital did not willfully violate the terms of the Settlement Orders.  We affirm.[1]

## FACTS

Dr. Shah is a board certified vascular and interventional radiologist who formerly worked at the Hospital.  In December 1995, the Hospital claimed Dr. Shah had mishandled the diagnosis of six patients.  After a hearing, the allegations against Dr. Shah were found to be untrue.  The following month, the Hospital excluded Dr. Shah from the duty rotation schedule.  Dr. Shah then commenced an action against the Hospital by filing a complaint on January 19, 1996, alleging the Hospital had engaged in a malicious and conspiratorial peer review and denied him his right to practice (the 1996 Action).  On the day of trial, the parties reached a settlement agreement and the trial court subsequently entered the 2001 Consent Order, which memorialized the parties' confidential settlement agreement.

The Consent Order (1) provided a monetary award to Dr. Shah; (2) required that future Quality Assurance (QA) reviews of Dr. Shah's medical cases would be removed from the responsibility of radiologists who were associated with the Hospital; (3) enabled either party to bring a dispute regarding the QA review or the duty rotation aspects of the settlement before the court "in the form of a Petition for a Rule to Show Cause"; and (4) dismissed the 1996 Action with prejudice.  In essence, the Consent Order removed Dr. Shah from the "normal and traditional" QA process conducted by other radiologists within the Hospital's Radiology Department and established a process whereby an outside, board-certified radiologist would review Dr. Shah's medical cases instead.  Upon the selection of an outside reviewer, the reviewer was to have oversight of the selection process and review of Dr. Shah's cases.  The Consent Order only addressed the

---

[1] The Hospital filed a motion to supplement the record two days before oral arguments were scheduled.  At oral arguments, without objection, the motion was granted.

intradepartmental QA process and it expressly provided that Dr. Shah would continue to be bound by the Hospital's Bylaws.

Following the issuance of the Consent Order, the parties were unable to mutually agree upon an outside reviewer. Consequently, the Hospital filed a petition for rule to show cause asking the court to clarify matters addressed in the Consent Order, specify those matters covered by Dr. Shah's QA review process, and clarify the procedures for addressing issues not related to Dr. Shah's extra-departmental QA review process.[2] After a hearing on the petition, the trial court issued the Supplemental Order, which provided more explicit instructions regarding the selection and role of the outside reviewer.

The Supplemental Order first indicated that the purpose of the unique QA process approved for Dr. Shah's cases was "to provide an independent and impartial QA review of Dr. Shah's cases that would not involve the other radiologists within the Hospital's Department of Radiology who have been litigants in this case." The Supplemental Order then noted that "[t]he stated goal of the Consent Order is to remove the [Radiology] Department and the Chief of the Department from involvement in the QA process to ensure fairness, impartiality, and to remove any claim of bias." After recognizing that the 2001 Consent Order did not address alleged violations of Administrative Requirements, the Supplemental Order noted that "[d]uring the hearing, Dr. Shah [had] stated his willingness to have alleged violations of noncompliance with Administrative Requirements handled by the Chief [of the Radiology Department]." Therefore, the Supplemental Order provided that the Chief of the Radiology Department would be responsible for handling issues related to Dr. Shah's compliance with Administrative Requirements, i.e., those matters outside the scope of departmental QA addressed by the Consent Order. The Supplemental Order granted the Chief of the Radiology Department discretion to refer matters to the Chief of Medical Staff or the Medical Executive Committee (MEC).

The Supplemental Order also addressed the process for handling Dr. Shah's "QA process or a complaint against Dr. Shah [that] involves an allegation that Dr. Shah

---

[2] The court referred to these other matters cumulatively as "Administrative Requirements," although these matters encompassed much more, including: state and federal regulations; the Hospital's Directives, Bylaws, and Policies; and licensing criteria. All of these items govern every physician affiliated with the Hospital.

deviated from the standard of care in treating a patient . . . ."  The court specified that "every effort should be made to make the review as similar as possible to the customary and prevailing procedure followed for any other person on the Medical Staff."  As a matter of course, the outside reviewer was to review Dr. Shah's cases and issue a "decision" regarding his work.  The outside reviewer was to then notify the MEC, the Hospital's chief of staff, and Dr. Shah of his or her decision within thirty days.  The Supplemental Order provided that "[u]pon receipt of the Decision, the MEC shall determine what action, if any, should be taken . . . ."  The trial court concluded the Supplemental Order by stating:

> Nothing in this Order or in the original Consent Order precludes the initiation of any administrative action provided under the Bylaws or Policies, or limits the Board of Directors of the Palmetto Health Alliance or Hospital management to take such administrative action as they deem necessary for the proper administration and management of the Palmetto Health Alliance and/or Hospital and to assure quality patient care is provided.

Dr. Shah filed a motion to alter or amend the Supplemental Order, but the trial court denied the motion, stating: "The solution of this dispute has to be made to fit within an overlay of federal, state, and local laws and regulations; requirements to meet medical and hospital standards; recognition of patient rights and the public interest; and, strict rules of confidentiality."  Ultimately, the Hospital and Dr. Shah mutually agreed upon Dr. Bayne Selby, a radiologist with the Medical University of South Carolina, to serve as the outside reviewer.  Throughout the following year, Dr. Selby reviewed Dr. Shah's cases and rendered reports as required by the Settlement Orders.

Shortly after receiving Dr. Selby's fourth report, the MEC initiated a "corrective action" against Dr. Shah.  On April 5, 2004, the MEC decided to place Dr. Shah on a ninety-day probation, which the MEC subsequently extended to six months.  Dr. Shah appealed.  After a lengthy hearing, the Hospital's Fair Hearing Committee (FHC) issued a report of its findings and recommendations to the MEC.  In this report, the FHC expressed its opinion that a random audit of invasive procedures performed by Dr. Shah from that point forward would provide a better measurement of Dr. Shah's competence than would a retrospective review of past cases.  Therefore, the FHC recommended the MEC place Dr. Shah on probation until September 5, 2005, to allow the Hospital to conduct such an audit.  The FHC

also recommended that the MEC require Dr. Shah to successfully complete several requirements as conditions of his probation. Dr. Shah appealed to the Hospital's Board of Directors, but the Board upheld the decision.

In compliance with the FHC report, Dr. Selby began reviewing a number of Dr. Shah's recent cases involving invasive procedures. During this time, Dr. Shah filed a petition for rule to show cause and a memorandum in support of the petition, alleging the Hospital was in contempt of the Settlement Orders. However, the court never held a hearing or ruled on Dr. Shah's petition. Dr. Selby's review resulted in three more reports. On October 31, 2005, the MEC met to discuss Dr. Selby's reports and whether Dr. Shah had satisfied all of the terms of his probation. The MEC ultimately determined Dr. Shah had not satisfactorily met the requirements as outlined in his probation. Therefore, the members of the MEC concluded the meeting by unanimously voting to suspend Dr. Shah's hospital privileges and to recommend the Hospital revoke such privileges.

On December 13, 2005, the FHC commenced a termination hearing. The purpose of the hearing was to hear Dr. Shah's challenge to the MEC's decision to suspend his hospital privileges and its recommendation that the Hospital permanently revoke such privileges. The hearing lasted three days, during which Dr. Shah called eighteen witnesses to testify on his behalf. After the hearing concluded, but prior to the FHC rendering its decision, Dr. Shah filed an amended petition for rule to show cause and a memorandum in support of the amended petition, alleging the Hospital's failure to comply with the terms of the Settlement Orders and Bylaws. Shortly thereafter, on December 30, 2005, the FHC issued its report upholding the MEC's decision to terminate Dr. Shah. The FHC based its decision on its findings that Dr. Shah (1) failed to satisfy the terms of his probation; (2) continued to suffer deficiencies in his clinical competence; and (3) failed to adhere to the Hospital's administrative policies and procedures.

On March 14, 2006, Dr. Shah appeared before the Hospital's Board of Directors to appeal his termination. However, the Board sent Dr. Shah a letter the following month stating its decision to affirm his termination. Shortly thereafter, on April 13, 2006, Dr. Shah filed a third petition for rule to show cause and memorandum in support, again alleging the Hospital's repeated failure to comply with the Settlement Orders. As with the prior petitions, for some unknown reason the trial court never scheduled a hearing on the matter. Therefore, Dr. Shah commenced a new lawsuit against the Hospital by filing a complaint on July 12, 2006, asserting

causes of action for civil compensatory contempt, breach of the Settlement Orders, and breach of the Hospital's Bylaws (the 2006 Action).

After the parties had commenced discovery in preparation for the 2006 Action, the trial court issued an order granting the parties' request to assign the 2006 Action and the pending petitions for rule to show cause to the Honorable Doyet A. Early, III.  At a subsequent motions hearing, the parties announced to the trial court that they had reached an agreement to proceed on the Petitions and dismiss the 2006 Action with prejudice.  On November 10, 2008, the trial court entered a consent order of dismissal (the Order of Dismissal) signed by all parties.  The Order of Dismissal encompassed the parties' agreement that Dr. Shah would dismiss the 2006 Action with prejudice and proceed on the Petitions.  The Order of Dismissal also provided "The parties may argue and rely on such information, documents, and discovery from the 2006 Action, and affidavits of Drs. Shah, Close and Waldren, as may be relevant and admissible therein."

Two days after the trial court issued the Order of Dismissal, Dr. Shah filed a "memo in support of consolidated petitions for rule to show cause."  After a hearing, the trial court issued an order on February 26, 2009, denying the Petitions. In its order, the trial court found the only permissible grounds and the only permissible relief for contempt were those set forth in the three Petitions and supporting memoranda pending at the time of the Order of Dismissal.  Therefore, the trial court declined to consider any grounds for contempt not asserted in the Petitions and the three supporting memoranda, including five alleged violations of the Settlement Orders set forth in Dr. Shah's "memo in support of the consolidated petitions."  As to the grounds for contempt set forth in the Petitions, the trial court found, "[Dr. Shah's] allegations, even if assumed true, do not come within the narrowly drawn ambit of the Settlement Orders' proscribed and prescribed conduct. Moreover, the evidence convinces me that [the Hospital] never intended to violate the Settlement Orders, assuming it did in some way."  The trial court also ruled, "In addition, all motions are denied because the relief sought by [Dr. Shah was] not available as a matter of law."  Pursuant to Rule 59, SCRCP, Dr. Shah filed a motion to alter or amend the judgment.  However, the trial court issued an order on April 2, 2009, denying Dr. Shah's motion.  This appeal followed.

**STANDARD OF REVIEW**

A decision on contempt rests within the sound discretion of the trial court, and an appellate court will not disturb such decision unless the trial court has abused its

discretion. *DiMarco v. DiMarco*, 393 S.C. 604, 607, 713 S.E.2d 631, 633 (2011). As an equitable matter, we review the exercise of that discretion de novo. *See Chisholm v. Chisholm*, 396 S.C. 507, 510, 722 S.E.2d 222, 223 (2012) (reviewing the family court's discretion in awarding attorney's fees under a de novo standard of review). Consequently, we will affirm the decision of the trial court unless the appellant satisfies this court that the preponderance of the evidence is against the findings of the trial court. *Id.*

## ANALYSIS

Dr. Shah first challenges the trial court's ruling that the only grounds for contempt properly before it were those asserted in the three Petitions. Dr. Shah argues (1) such finding was a direct contradiction of the parties' agreement and the unequivocal language in the Order of Dismissal, and (2) new issues of contempt arising from the 2006 Action were tried by implied consent of the parties. We disagree.

"As a general rule, judgments are to be construed like other written instruments." *Hailey v. Hailey*, 357 S.C. 18, 25, 590 S.E.2d 495, 498 (Ct. App. 2003) (internal quotation marks omitted). "The determinative factor is the intent of the parties or the court, as gathered, not from an isolated part of the contract or judgment but from all its parts." *Petition of White*, 299 S.C. 406, 412, 385 S.E.2d 211, 215 (Ct. App. 1989). Hence, a judgment or contract should be examined and considered in its entirety. *Id.* "[I]f the language employed is plain and unambiguous, there is no room for construction or interpretation and the effect thereof must be declared in the light of the literal meaning of the language used." *Id.*

We find the Order of Dismissal unequivocally limited the grounds for contempt to those asserted in the Petitions. The first paragraph provides, "The Plaintiffs agree to and hereby dismiss [the 2006] action against all Defendants *with prejudice*." The order subsequently provides, "Plaintiffs will proceed in the 1996 action on the pending petitions for rule to show cause and memoranda in support." Read together, we find these provisions unambiguously express the parties' agreement for Dr. Shah to dismiss all of his claims against the Hospital from the 2006 Action and proceed solely on the three petitions for rule to show cause that were pending at the time the court issued the Order of Dismissal. Dr. Shah interprets the language permitting "[t]he parties [to] argue and rely on such information, documents and discovery from the 2006 action, and affidavits of Drs. Shah, Close and Waldren, as may be relevant and admissible therein," as expressly allowing

him to assert grounds for contempt other than those in the Petitions. However, looking at the Order of Dismissal as a whole, this language can only reasonably be interpreted as an expression of the court's intent to permit the parties to supplement or support their existing arguments already set forth in the pending Petitions and supporting memoranda with information subsequently discovered in preparation for the 2006 Action. Therefore, grounds for contempt other than those asserted within the Petitions and the three supporting memoranda were not properly before the trial court.

As to Dr. Shah's implied consent argument, we find the issue is not preserved for our review. Dr. Shah argues the Hospital's failure to object to the introduction of evidence relating to issues from the 2006 Action constituted the Hospital's implied consent to litigate grounds for contempt not asserted in the Petitions. However, Dr. Shah did not make this argument in his motion to alter or amend the judgment. Therefore, the issue was never ruled upon by the trial court. *See Herron v. Century BMW*, 395 S.C. 461, 465, 719 S.E.2d 640, 642 (2011) ("[A]n issue cannot be raised for the first time on appeal." (internal quotation marks omitted)). Furthermore, even if the issue of implied consent was properly preserved, Dr. Shah's argument lacks merit because any objection made by the Hospital to the introduction of evidence would have been futile due to the trial court's ruling that it would allow all evidence offered, despite any objections, and it would then determine the relevancy, admissibility, and persuasiveness of the evidence. *See Staubes v. City of Folly Beach*, 339 S.C. 406, 415, 529 S.E.2d 543, 547 (2000) (providing our courts do not require parties to engage in futile actions in order to protect their interests on appellate review). For these reasons, we find the trial court acted within its discretion by only considering evidence that related to the grounds for contempt asserted in the Petitions and the three supporting memoranda.

Next, Dr. Shah challenges the trial court's determination that the Hospital was not in contempt of the Settlement Orders. Dr. Shah argues the trial court erred by finding the Settlement Orders only applied to the initial QA review, and therefore, allegations that the Hospital violated its Bylaws did not provide grounds for holding the Hospital in contempt. Dr. Shah also argues that the evidence supports finding the Hospital in contempt. We disagree.

"All courts have the inherent power to punish for contempt . . . ." *Ex parte Cannon*, 385 S.C. 643, 660, 685 S.E.2d 814, 824 (Ct. App. 2009) (citation omitted). "[C]ontempt results from the willful disobedience of a court order."

*Knight v. Austin*, 396 S.C. 518, 522, 722 S.E.2d 802, 804 (2012) (citation omitted). "A willful act is one which is done voluntarily and intentionally with the specific intent to do something the law forbids, or with the specific intent to fail to do something the law requires to be done; that is to say, with bad purpose either to disobey or disregard the law." *Miller v. Miller*, 375 S.C. 443, 454, 652 S.E.2d 754, 759-60 (Ct. App. 2007) (internal quotation marks omitted). "Where a contemnor is unable, without fault on his part, to obey an order of the court, he is not to be held in contempt." *Smith-Cooper v. Cooper*, 344 S.C. 289, 301, 543 S.E.2d 271, 277 (Ct. App. 2001) (citation omitted). "In a proceeding for contempt for violation of a court order, the moving party must show the existence of a court order and the facts establishing the respondent's noncompliance with the order." *Hawkins v. Mullins*, 359 S.C. 497, 501, 597 S.E.2d 897, 899 (Ct. App. 2004) (citation omitted). "Before a court may find a person in contempt, the record must clearly and specifically reflect the contemptuous conduct." *Miller*, 375 S.C. at 454, 652 S.E.2d at 760 (internal quotation marks omitted). "Once the moving party has made out a prima facie case, the burden then shifts to the respondent to establish his or her defense and inability to comply with the order." *Id.* (internal quotation marks omitted).

We find the Settlement Orders only govern the QA review process; these orders do not purport to govern every aspect of continued interaction between Dr. Shah and the Hospital. Both the 2001 Consent Order and the 2003 Supplemental Order expressly set forth limited requirements regarding Dr. Shah's QA reviews. The purpose of the Consent Order was to establish an extra-departmental process for conducting Dr. Shah's QA reviews to ensure that Dr. Shah received fair and unbiased reviews of his cases. The Consent Order does not reference any other stage of the peer review process, much less set forth any requirements as to how the Hospital was to conduct its review of matters outside the QA process.

The court issued the Supplemental Order to set forth additional procedures and guidelines regarding the QA review process and to "clarify the procedure for handling issues related to non-QA Administrative Requirements." In this order, the court first recognized that "Administrative Requirements are not matters traditionally included in the QA Process as envisioned by the prior Consent Order," and therefore, "should be addressed through the procedures set forth in the Bylaws and Policies." This language acknowledges that the court only intended to specify how the Hospital conducted QA reviews of Dr. Shah's cases. Accordingly, the Supplemental Order directs the Chief of the Hospital's Radiology Department to handle any allegation that Dr. Shah violated the Administrative Requirements in

accordance with the Hospital's Bylaws and Policies. The fact that the court directs a person affiliated with the Hospital to handle these administrative matters internally and in accordance with the Hospital's rules and regulations expresses the court's intent to narrowly limit its intrusion on the Hospital's self-governance to directing how the Hospital conducted QA reviews of Dr. Shah's cases. The Supplemental Order concludes by reiterating this intent, expressly indicating that the court does not intend to preclude the Hospital from taking *any action* authorized under the Bylaws or limit the Hospital's managers and directors from taking such action that they deem necessary.

Although the Supplemental Order addresses matters outside the QA review process, such as Administrative Requirements, the court did not direct the Hospital to handle these matters in any particular manner. Rather, the court permitted the Hospital to address these matters in accordance with its own rules and regulations. Because the Settlement Orders only set forth requirements governing how the Hospital conducts QA reviews of Dr. Shah's cases, our review in this case is limited to determining whether the Hospital complied with those requirements. Therefore, we decline to address the asserted grounds for contempt that are unrelated to the QA review process. *See* Rule 220(b)(2), SCACR (providing an appellate court need not address points unnecessary to the decision of the appeal).

As to the merits of the case, we find Dr. Shah failed to present clear and convincing evidence that the Hospital willfully violated the Settlement Orders. Dr. Shah contends the Hospital failed to comply with requirements governing the QA review by not providing Dr. Selby, the outside reviewer, with oversight authority in the case selection process. To support his position, Dr. Shah points to evidence that Dr. Selby did not personally select the medical cases used in his review. However, Dr. Shah's argument misinterprets the Settlement Orders. The Consent Order provides a mutually selected outside reviewer will conduct the QA reviews of Dr. Shah's cases and "[t]his outside reviewer will have oversight authority over the case selection process as well as the cases themselves. The outside reviewer will insure that the selection process is performed consistent with [the Hospital's] established protocols and not in a discriminatory fashion." The Supplemental Order subsequently reiterates this latter provision, indicating "every effort should be made to make the review as similar as possible to the customary and prevailing procedure followed for any other person on the Medical Staff." This language unambiguously required the Hospital to provide the outside reviewer with the authority to *oversee* the QA review for the purpose of ensuring Dr. Shah's reviews

were conducted in accordance with the existing procedures and protocols, and not in a discriminatory manner.

While this authority would certainly permit the outside reviewer to personally select the cases used in Dr. Shah's QA review if he or she so chose, the Settlement Orders did not specifically require the outside reviewer to do so. Moreover, the Settlement Orders do not prohibit the Hospital from submitting cases to Dr. Selby for his review. Although the Hospital selected the first group of cases that Dr. Selby used in his review, the Hospital fully complied with Dr. Selby's subsequent request for additional cases selected on a different basis. The evidence shows Dr. Selby was then free to choose which cases he would use in his review of Dr. Shah. The record herein does not clearly support a finding that the Hospital willfully impaired or prohibited Dr. Selby's authority to oversee the QA review and process. For these reasons, we find the trial court acted within its discretion by declining to hold the Hospital in contempt.

Again, we emphasize that the merits of the decision to terminate Dr. Shah's hospital privileges is not before us. Rather, our review of this case is narrowly limited to determining whether the Hospital willfully violated the terms of the Settlement Orders. In addition, while we recognize the procedures adopted by the parties and the trial court were unusual, we also recognize the court's broad discretion in choosing to implement equitable remedies or sanctions, including contempt. Even if the evidence is conflicting as to willful conduct, the fact finder's decision on contempt may be affirmed absent an abuse of the broad discretion granted to the court.[3]

**CONCLUSION**

For the foregoing reasons, the decision of the trial court is hereby

**AFFIRMED.**

**GEATHERS, J., concurs.**

---

[3] In light of our disposition herein, we decline to address Dr. Shah's remaining arguments. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (providing an appellate court need not address all issues on appeal when the disposition of one issue is dispositive).

**SHORT, J., dissenting**:

I respectfully dissent. The appellant, Dr. Shah, had full privileges at the Hospital for more than twenty-nine years, and he maintained a large and profitable independent radiology practice there until the Hospital terminated his privileges on March 14, 2006. In 1995, the Hospital awarded an exclusive contract to a radiology group to render all radiological services for the Hospital, and that is when this dispute began. Ultimately, the parties reached a settlement agreement; however, they could not agree on an outside reviewer and the scope of the review process. Therefore, Judge Keesley issued a supplemental order addressing the issues and providing for a method to be used by the parties to select an outside reviewer.

Dr. Shah alleged the Hospital willfully violated the settlement orders by failing to comply with requirements governing the review process by not providing Dr. Selby, the outside reviewer, with oversight authority in the case selection process. However, the trial court found the settlement orders only applied to the QA review process; thus, Dr. Shah's allegations failed to provide grounds for holding the Hospital in contempt.[4] When read in totality, I find the clear intent of the 2001 consent order and 2003 supplemental order was to provide for an outside review of Dr. Shah's cases to determine whether he deviated from the standard of care in treating patients. I also find the orders do not limit the outside review to the QA review process because the supplemental order states:

> When a matter involves the traditional QA Process *or a complaint against Dr. Shah involves an allegation that Dr. Shah deviated from the standard of care in treating a patient*, those matters shall be referred to an outside

---

[4] "Contempt results from the willful disobedience of a court order, and before a court may find a person in contempt, the record must clearly and specifically reflect the contemptuous conduct." *Widman v. Widman*, 348 S.C. 97, 119, 557 S.E.2d 693, 705 (Ct. App. 2001). A party can act willfully by voluntarily and intentionally doing something the law forbids or failing to do something the law requires to be done. *Ex parte Kent*, 379 S.C. 633, 637, 666 S.E.2d 921, 923 (Ct. App. 2008).

reviewer pursuant to the Consent Order and the
procedures set forth herein.  (Emphasis added).

On December 30, 2005, the Hospital's Fair Hearing Committee issued its report upholding the decision to terminate Dr. Shah's privileges.  According to the report, Dr. Shah's termination was justified in part by the Hospital's internal review of thirty-five emergency room cases, which had not been reviewed by Dr. Selby as required by the 2003 supplemental order.  These cases were not selected in a process overseen by Dr. Selby, and he did not review them.  In addition, these cases contained allegations that Dr. Shah deviated from the standard of care in treating patients; therefore, they should have been reviewed by Dr. Selby per the settlement order.  These facts are undisputed.

The circuit court refused to consider this evidence because it found Dr. Shah did not assert it in any of his pending petitions for contempt, and the Hospital's internal review of thirty-five emergency room cases was done at the MEC and FHC stage of the PPR Process and not the QA stage.  However, I find the circuit court erred in refusing to consider this evidence concerning the issue of contempt.  This evidence was revealed through discovery in the 2006 action, and the parties agreed this evidence could be considered by the court.  Dr. Shah's principal grounds in his petitions for contempt were that the Hospital did not allow Dr. Selby to have oversight regarding the case selection process, and this evidence clearly demonstrated the Hospital's conscious disregard for the 2003 supplemental order, which provided for an outside review of Dr. Shah's cases to determine whether he deviated from the standard of care in treating patients.  I find the refusal to allow Dr. Selby to review the thirty-five emergency room cases is evidence of the Hospital's continual refusal to comply with the 2003 supplemental order.  Further, the issue concerning the thirty-five emergency room cases was presented to the court without objection, and the Hospital presented evidence of the emergency room cases in its memorandum to the court.

I further find the unauthorized review of the thirty-five emergency room cases by the Hospital's employee, Dr. John Stewart, and the Hospital's reliance thereon as justification for terminating Dr. Shah's privileges constitutes overwhelming evidence that the Hospital intentionally and willfully violated the 2003 supplemental order.  There is no question the Hospital knew all reviews of Dr. Shah's cases were to be handled by an independent outside reviewer only.  As a result, I find the Hospital willfully failed to comply with 2001 consent order and the 2003 supplemental order by conducting an internal review of the thirty-five

emergency cases and determining Dr. Shah violated the standard of care. The Hospital should not have considered these cases in its decision to revoke Dr. Shah's hospital privileges. Therefore, I would remand this case to the trial court to determine the appropriate remedy to be imposed.