# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Allison A. Taylor nka Allison M. Aldridge, Appellant,

and

Melissa F. Brown, Third-Party Appellant,

v.

David G. Taylor, Respondent,

and

Kendra Christmas, Third-Party Respondent.

Appellate Case No. 2017-001816

---

Appeal From Charleston County
Jocelyn B. Cate, Family Court Judge

---

Opinion No. 5831
Heard March 18, 2020 – Filed July 7, 2021

---

## AFFIRMED IN PART AND REVERSED IN PART

---

J. Michael Taylor, of Taylor/Potterfield, of Columbia, for
Appellant Melissa F. Brown.

Leslie Therese Sarji, of Charleston, for Appellant Allison
A. Taylor.

Rene Stuhr Dukes, of Rosen Hagood LLC, of Charleston,
for Respondent Kendra Christmas.

Deborah Kay Lewis, of Charleston, for Respondent David G. Taylor.

_____

**WILLIAMS, J.:**  Allison M. Aldridge (Mother) appeals the family court's order finding her in contempt for violating the visitation provisions of her divorce order (Divorce Decree).  Mother and Melissa F. Brown, Mother's counsel in the contempt proceedings, (collectively, Appellants) jointly appeal the family court's order quashing subpoenas they issued.  Appellants also appeal the family court's orders finding the subpoenas imposed an undue burden and expense and ordering Appellants to pay David G. Taylor's (Father) and Kendra Christmas's, Father's girlfriend, attorney's fees as a sanction.  We affirm in part and reverse in part.

## FACTS/PROCEDURAL HISTORY

Mother and Father (collectively, Parents) married on April 1, 2006, and had a child (Son).  Parents filed for a divorce in 2011 and entered into a settlement agreement that established custody and a visitation plan.  In 2013, the family court granted Parents a divorce on the ground of one year's continuous separation and incorporated the settlement agreement into the Divorce Decree.  The Divorce Decree established joint custody of Son, granting Mother primary placement and establishing summer and alternating weekend visitation for Father.  The Divorce Decree also provided that Parents would mutually agree on holiday visitation and established a default visitation schedule in the event Parents failed to reach an agreement.  The Divorce Decree also stated that the default schedule could be altered by Parents.

In late November 2016, Father filed an affidavit (Affidavit) with the family court, alleging Mother violated the Divorce Decree by denying him visitation for Thanksgiving and Son's birthday that year.  He asked the court to "modify [his] parenting time (visitation) with [Son] for all weekends, holidays[,] and summer in consideration of" Mother's violations of the Divorce Decree and to award him attorney's fees.  On December 2, 2016, the court issued a rule to show cause and set a hearing date for January 31, 2017.

Father served Mother with the rule to show cause and his Affidavit on January 15, 2017.  Mother retained Brown on January 25, and she filed a return on January 26.  In her return, Mother denied willfully violating the Divorce Decree and requested attorney's fees.

On January 26, Brown served subpoenas on Father, Christmas, and Julie Tillman, and on January 27, she served a subpoena on April Shores.[1] The subpoenas commanded each individual to appear at the hearing on January 31 to testify and produce certain documents. Brown mailed and emailed Father a copy of all the subpoenas on the same day she served them. On January 27, Father filed a motion to quash the subpoenas and requested sanctions and attorney's fees. On the date of the hearing, Mother filed a return to Father's motion to quash asserting the requested documents were relevant to Father's requested relief and his ability to pay attorney's fees.

At trial, the family court first addressed Father's motion to quash. Christmas, who had retained counsel, orally joined Father's motion. After reviewing the pleadings and hearing additional argument, the family court orally quashed the subpoenas as to the requested production of documents. The court briefly noted its reasoning on the record and stated it would later reduce its ruling to writing. The court initially dismissed the nonparty witnesses as part of its quashing but ultimately recalled them after realizing the subpoenas additionally requested their presence to testify. Christmas and Shores returned, but Tillman could not be reached.

Father stipulated he was capable of paying Mother's attorney's fees should she prevail on the issue of contempt, and Mother accepted his stipulation. The parties then presented evidence on the issue of contempt. Near the end of the day, the family court assured Mother it would not grant Father visitation for every weekend, holiday, and all of summer break even if he were to prevail. Mother informed the court that because of this assurance and Father's stipulation for attorney's fees, she no longer needed to question the nonparty witnesses, and the court released them. The remainder of the trial occurred on April 11 and July 10.

On August 1, 2017, the family court issued an order (the Final Order) finding Mother in contempt for willfully violating the Divorce Decree by denying Father visitation for Thanksgiving and Son's birthday in 2016. The family court awarded Father $11,742.50 in attorney's fees under the *E.D.M. v. T.A.M.*[2] and *Glasscock v. Glasscock*[3] factors and as a compensatory contempt award under *Miller v. Miller*.[4]

---

[1] Father is a lawyer, and Shores is a secretary at his firm. Tillman is a certified public accountant (CPA) whom Father used.
[2] 307 S.C. 471, 415 S.E.2d 812 (1992).
[3] 304 S.C. 158, 403 S.E.2d 313 (1991).
[4] 375 S.C. 443, 652 S.E.2d 754 (Ct. App. 2007).

The family court also awarded Father five days of make-up visitation and made three modifications to the Divorce Decree: the first modified the visitation provision regarding Son's birthday; the second required any agreed alteration of visitation to be in writing, such as in text messages or emails; and the third established that the alternating weekend visitation would reset after each holiday. The family court sentenced Mother to thirty days' incarceration but provided her the ability to purge the sentence by paying Father's attorney's fees and by cooperating with Father in completing his make-up visitation days.

In the same order, the family court provided its written ruling on Father's motion to quash and his request for sanctions. The family court listed five grounds for quashing the subpoenas: (1) Brown violated Rule 45, SCRCP, by failing to give Father notice of the subpoenas at least ten days before the time specified for compliance; (2) the subpoenas were issued in contravention of Rule 25, SCRFC, which, at that time, prohibited discovery in family court unless the parties consented or the court issued an order of discovery;[5] (3) the subpoenas imposed an undue burden and expense on the witnesses; (4) the subpoenas failed to allow reasonable time for compliance; and (5) the subpoenas required the witnesses to perform affirmative acts. On the same day, the family court also issued a separate order (the Christmas Order) finding the subpoena imposed an undue burden and expense on Christmas. Because it found the subpoenas imposed an undue burden and expense on Father and Christmas, the family court ordered Appellants to pay Father's and Christmas's attorney's fees of $3,186.25 and $3,465.00, respectively, as a sanction. The award to Christmas also included $140.00 in compensation for childcare Christmas obtained so she could gather the requested material.

On August 11, 2017, Mother filed a Rule 59, SCRCP, motion to alter or amend the Final Order and the Christmas Order, and Brown filed a motion joining Mother's motion. On August 15, the family court denied Appellants' motions with the exception of Mother's request that Father exercise his make-up visitation before August 1, 2018. This appeal followed.[6]

---

[5] Rule 25 was subsequently amended and this prohibition was removed.

[6] On August 31, 2017, Mother moved (1) pursuant to Rule 62, SCRCP, and Rule 241, SCACR, to stay the effect of the Final Order's financial portions because it was not automatically stayed by the notice of appeal and (2) to deposit with the court pursuant to Rule 67, SCRCP, the money ordered payable to Father and Christmas because the fees were disputed on appeal. On October 31, 2017, the family court granted the motion.

## ISSUES ON APPEAL

I.     Did the family court err in finding Mother in contempt for violating the Divorce Decree?

II.    Did the family court err in quashing the subpoenas issued by Appellants?

III.   Did the family court err in finding the issued subpoenas imposed an undue burden and expense on Father and Christmas?

## STANDARD OF REVIEW

On appeal from the family court, the appellate court reviews factual and legal issues de novo. *Stoney v. Stoney*, 422 S.C. 593, 596, 813 S.E.2d 486, 487 (2018) (per curiam). Thus, the appellate court has the authority to find facts in accordance with its own view of the preponderance of the evidence. *Lewis v. Lewis*, 392 S.C. 381, 384, 709 S.E.2d 650, 651 (2011). However, this broad scope of review does not require the appellate court to disregard the fact that the family court, which saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Id.* at 385, 392, 709 S.E.2d at 651–52, 655. Therefore, the appellant bears the burden of convincing the appellate court that the family court committed error or that the preponderance of the evidence is against the family court's findings. *Id.* at 392, 709 S.E.2d at 655.

However, a ruling on a motion to quash a subpoena is a procedural ruling, which is reviewed under the abuse of discretion standard. *See Stoney*, 422 S.C. at 594 n.2, 813 S.E.2d at 486 n.2 (providing the standard of review for procedural matters is abuse of discretion). "An abuse of discretion occurs when the ruling is controlled by an error of law, or when based on factual conclusions, is without evidentiary support." *Landry v. Landry*, 430 S.C. 153, 160, 843 S.E.2d 491, 494 (2020).

## LAW/ANALYSIS

## I.     Contempt

Father asserts the matters of Mother's contempt and the modification of the Divorce Decree are moot because of Mother's compliance with the modifications and the make-up visitation. Father argues because the family court only stayed the

financial portions of its order and Mother has complied with other portions, there is no justiciable controversy for this court to resolve. *See Jordan v. Harrison*, 303 S.C. 522, 524, 402 S.E.2d 188, 189 (Ct. App. 1991) ("[When] one held in contempt for violation of a court order complies with the order, [the] compliance renders the issue of contempt moot and precludes appellate review of the contempt proceeding."). However, the record on appeal does not contain any evidence of Mother's alleged compliance. *See* Rule 210(h), SCACR ("Except as provided by Rule 212[, SCACR,] and Rule 208(b)(1)(C) and (2), [SCACR,] the appellate court will not consider any fact which does not appear in the Record on Appeal."). Accordingly, we decline to find Mother's appeal of the contempt moot.

Mother argues the family court erred in finding her in contempt for violating the Divorce Decree's visitation provisions for Thanksgiving (the Thanksgiving Provision) and Son's birthday (the Birthday Provision). We agree.

"Contempt results from the willful disobedience of a court order, and before a court may find a person in contempt, the record must clearly and specifically reflect the contemptuous conduct." *Widman v. Widman*, 348 S.C. 97, 119, 557 S.E.2d 693, 705 (Ct. App. 2001); *see also* S.C. Code Ann. § 63-3-620 (Supp. 2020) ("An adult who wil[l]fully violates, neglects, or refuses to obey or perform a lawful order of the court, . . . , may be proceeded against for contempt of court."). "A willful act is one which is 'done voluntarily and intentionally with the specific intent to do something the law forbids, or with the specific intent to fail to do something the law requires to be done . . . .'" *Widman*, 348 S.C. at 119–20, 557 S.E.2d at 705 (quoting *Spartanburg Cnty. Dep't of Soc. Servs. v. Padgett*, 296 S.C. 79, 82–83, 370 S.E.2d 872, 874 (1988) (per curiam)). Contempt can be criminal or civil depending on the purpose for exercising the power, the nature of the relief, and the purpose of the sentence imposed. *Poston v. Poston*, 331 S.C. 106, 111, 502 S.E.2d 86, 88 (1998). Civil contempt has a remedial purpose and serves to coerce the contemnor to comply with the court order. *See id.* Its sanctions can include a fee paid to the complainant or a prison sentence that may be purged upon compliance with a court order. *See id.* at 111–12, 502 S.E.2d at 88–89. "Civil contempt must be [shown] by clear and convincing evidence." *Id.* at 113, 502 S.E.2d at 89.

"Contempt is an extreme measure; this power vested in a court is not lightly asserted." *Noojin v. Noojin*, 417 S.C. 300, 306, 789 S.E.2d 769, 772 (Ct. App. 2016) (quoting *Bigham v. Bigham*, 264 S.C. 101, 104, 212 S.E.2d 594, 596 (1975)). "One may not be convicted of contempt for violating a court order which fails to tell him in definite terms what he must do. The language of the commands

must be clear and certain rather than implied." *Phillips v. Phillips*, 288 S.C. 185, 188, 341 S.E.2d 132, 133 (1986) (quoting *Welchel v. Boyter*, 260 S.C. 418, 421, 196 S.E.2d 496, 498 (1973)). "A court need go no further in reviewing the evidence in a contempt action when there is uncertainty in the commands of an order." *Id.*

## A. Thanksgiving Provision

Mother asserts the family court erred in finding she violated the Thanksgiving Provision because the provision gave her visitation for Thanksgiving in 2016. We agree.

The Divorce Decree provides that Parents are to mutually agree on holiday visitation. If Parents are unable to agree, the Divorce Decree provides default visitation arrangements. The default provision for Thanksgiving is for Mother to have Son from 6:00 P.M. on Wednesday to 6:00 P.M. on Sunday in even-numbered years and for Father to have Son for the same time period in odd-numbered years "[u]nless this rotation is altered at some point." The Divorce Decree neither explains how the rotation may be altered nor provides that such an alteration automatically occurs if Parents mutually agree for one parent to have Son for the entire holiday.

The record establishes that Parents regularly agreed on visitation, without triggering the default provisions, until 2016. That year, Parents failed to agree on Thanksgiving visitation thereby triggering the default rotation. At trial, Father asserted Parents altered the rotation in 2015 and Mother violated the Divorce Decree by not giving him Son for the entire 2016 Thanksgiving holiday. As the complainant, Father bore the burden of proving this assertion. *See Abate v. Abate*, 377 S.C. 548, 553, 660 S.E.2d 515, 518 (Ct. App. 2008) ("A party seeking a contempt finding for violation of a court order must show the order's existence and facts establishing the other party did not comply with the order."). Parents offered conflicting testimony as to the 2015 Thanksgiving visitation. Mother argued they simply agreed on a visitation arrangement for that year alone, and Father asserted they agreed to alter the rotation. The family court found that Parents agreed to alter the rotation in 2015 and that Mother violated the Divorce Decree by withholding Son from Father for Thanksgiving in 2016.

Based on our de novo review, we find the family court erred. The basis for Father's claim that Parents altered the rotation is a series of text messages Parents exchanged prior to Thanksgiving in 2015. Initially, we note the text messages

show the parties were attempting to come to an agreement regarding visitation. Father stated he would like to have Son "the entire time" but then asked to have Son Wednesday through Friday. Mother proposed Thursday through Sunday so that Son could visit an older family member in poor health Wednesday night. Father then asked if Parents would begin rotating Thanksgiving going forward. In response, Mother asked to split the 2015 holiday and stated "'rotation' can start next year with you," offering to exchange Son with Father on Thursday and allowing Father "a long weekend even though" the weekend was hers under the Divorce Decree's weekend rotation. Father then responded, "[Son] can stay with you Thanksgiving and through the weekend. If I am going to be alone, I am going to leave town." He did not state if he accepted Mother's offer or whether he understood the arrangement to be a mutual agreement on visitation for Thanksgiving 2015 or an agreement to alter the Thanksgiving rotation going forward.

This exchange could be interpreted as one of two results: (a) Parents failed to come to an agreement on how to facilitate visitation, relied on the Divorce Decree's default rotation, and agreed to alter the rotation so that Mother had odd-numbered years and Father had even-numbered years going forward or (b) Parents reached an agreement on how to conduct visitation for *that* year and did not invoke the default rotation. We find the messages themselves are inconclusive. Thus, we look to Parents' conduct following the messages.

Father's conduct following the text messages does not show an understanding that Parents agreed to alter the Thanksgiving rotation. This is clear when reviewing Parents' communication in September 2016. Parents were discussing visitation for the Labor Day holiday, and Mother informed Father she wanted to follow the Divorce Decree for the upcoming holidays. Father asked what that was because they had "never followed that agreement," and he stated he wanted to discuss and agree on a schedule for the upcoming holidays. A couple of weeks later, Parents were again discussing the upcoming holidays, and Father stated he wanted to set a schedule. Mother asked what was wrong with the Divorce Decree's plan, and Father responded,

> *I do not know what the court plan is.* It is based on sequential events (e.g., one year with you, one year with me, etc.). *We have never followed that.* . . . If you have time, read over the agreement. Maybe I am wrong. I have not read it. But I can go back and read it too.

(emphases added).  Father did not assert the rotation had been altered until a week before Thanksgiving in 2016.  Notwithstanding the family court's superior position to adjudge the credibility of the witnesses and assess conflicting evidence, we find Father's statement that he did not know the specifics of the Divorce Decree's visitation plan, his two statements indicating Parents had never followed the Divorce Decree's visitation plan, and Mother's testimony show Parents did not believe in 2015 that the text messages altered the Divorce Decree's default rotation.

Based on the foregoing, we find the preponderance of the evidence does not clearly and convincingly show that Parents agreed to alter the Thanksgiving rotation such that Father was entitled to the entire 2016 Thanksgiving holiday.  *See Stoney*, 422 S.C. at 596, 813 S.E.2d at 487 (providing that appellate courts exercise de novo review of the family court's factual and legal findings); *Lewis*, 392 S.C. at 384, 709 S.E.2d at 651 (stating the appellate court has the authority to find facts in accordance with its own view of the preponderance of the evidence in appeals from the family court); *Poston*, 331 S.C. at 113, 502 S.E.2d at 89 ("Civil contempt must be [shown] by clear and convincing evidence.").  Therefore, we hold the family court erred in finding Mother in contempt, and we reverse the family court on this issue.

### B.    Birthday Provision

Mother also argues the family court erred in finding her in contempt for violating the Birthday Provision in 2016 because the provision does not provide how the visitation is to occur when Son's birthday falls on a weekend.  We agree.

The Birthday Provision is contained within the holiday provisions and is subject to the requirement that Parents mutually agree on visitation.  It provides that in the absence of an agreement, in even-numbered years, Mother "shall have [Son] from after school the night before [Son's] birthday and [Father] shall have [Son] from after school on his birthday until the following morning."  In odd-numbered years, Mother's and Father's time with Son is reversed.

In 2016, Son's birthday fell on a Saturday.  Mother organized a party for Son on his birthday and Father attended.  Following the party, Parents, Son, other family members, and friends returned to Mother's house for Son to open presents.  Mother also organized for some of Son's friends who did not live in town to spend the night.  Father asserted Mother violated the Divorce Decree by denying him visitation with Son from the afternoon of Son's birthday until the following morning.

In the Final Order, the family court found Mother willfully violated the Birthday Provision by denying Father overnight visitation on Son's birthday and held her in contempt. The family court stated it was unreasonable to believe Parents would have agreed to sharing time with Son on his birthday only when it fell on a weekday. Noting that "this provision should have been more articulately drafted," the family court interpreted the provision's words "after school" as "defining words" referencing time, rather than "limiting words." The family court found that because Mother testified Son's school ended at 3:00 P.M., the Divorce Decree required her to relinquish Son to Father at that time if Son's birthday fell on a weekend.

We hold the family court erred in finding Mother willfully violated the Birthday Provision. The Birthday Provision does not provide how Parents are to conduct visitation with Son when his birthday falls on a weekend, and both parties acknowledged this. Therefore, the family court erred in finding Mother in contempt for failing to deliver Son to Father at 3:00 P.M. on Son's birthday. *See Phillips*, 288 S.C. at 188, 341 S.E.2d at 133 ("One may not be convicted of contempt for violating a court order which fails to tell him in definite terms what he must do. The language of the commands *must be clear and certain rather than implied*." (emphasis added) (quoting *Welchel*, 260 S.C. at 421, 196 S.E.2d at 498)). Accordingly, we reverse the family court on this issue. *See id.* ("A court need go no further in reviewing the evidence in a contempt action when there is uncertainty in the commands of an order.").

## II.     Motion to Quash the Subpoenas

Appellants argue the family court erred in quashing the subpoenas. We disagree.

The family court listed five reasons for quashing Brown's subpoenas, one of which was Brown's failure to serve the subpoenas on Father at least ten days before the time specified for compliance.[7] Appellants argue the notice provision applies only

---

[7] At the time of trial, Rule 45(b)(1) included the following sentence: "Unless otherwise ordered by the court, prior notice in writing of any commanded production of documents and things or inspection of premises before trial shall be served on each party in the manner prescribed by Rule 5(b)[, SCRCP,] at least 10 days before the time specified for compliance." Rule 45 was recently amended to move this language to a new subsection (a)(4). The amendment retained the notice requirement but eliminated the court's ability to waive or shorten the notice period.

to subpoenas that require production of documents before trial—which Appellants label "discovery subpoenas"—and does not apply to subpoenas requesting the individual's presence at trial to testify and to produce the requested documents at that time—which Appellants label "trial subpoenas."  This distinction between a "trial subpoena" and a "discovery subpoena" is not explicitly stated in Rule 45, but Appellants claim it exists based on Rule 45(a)(2).  However, we find this subsection does not include such a distinction; it merely vests courts with the authority to issue a subpoena depending on what the subpoena commands and to whom the subpoena is directed.[8]

Our supreme court has rejected the argument that the Rule 45 notice requirement is not required for a subpoena that requests the witness to produce certain documents and appear at a scheduled hearing with the requested documents.  *See In re Fabri*, 418 S.C. 384, 389, 793 S.E.2d 306, 309 (2016) (per curiam).  In that case, the supreme court stated Rule 45 requires "that notice be given to the opposing party *anytime* a party issues a subpoena commanding the production of documents, *regardless of when the documents are commanded to be produced*."  *Id.* (first emphasis added).  Because Brown's subpoenas requested witnesses to produce certain documents at the hearing, she was required to serve Father notice of the subpoenas ten days before the requested production date.

Appellants assert Brown could not have provided Father notice ten days before the hearing on January 31 because Father served Mother with the rule to show cause on January 15 and Brown was retained on January 25.  However, Father's service was timely.  *See* Rule 14, SCRFC ("The rule to show cause, and the supporting affidavit or verified petition, shall be served, in the manner prescribed herein, not later than ten days before the date specified for the hearing . . . .").  Brown could have requested the court waive or shorten the notice period pursuant to the former Rule 45(b)(1), but she failed to give the court that opportunity, stating at trial that she did not believe a hearing would be scheduled in time.  *See Fabri*, 418 S.C. at 388, 793 S.E.2d at 308–09 ("*Unless otherwise ordered by the court*, prior notice in writing of any commanded production of documents and things . . . shall be served

---

[8] Rule 45(a)(2) ("A subpoena commanding attendance at a trial or hearing shall issue from the court for the county in which the hearing or trial is to be held.  A subpoena for attendance at a deposition shall issue from the court for the county designated by the notice of deposition as the county in which the deposition is to be taken.  If separate from a subpoena commanding the attendance of a person, a subpoena for production or inspection shall issue from the court for the county in which production or inspection is to be made.").

on each party . . . at least 10 days before the time specified for compliance." (emphasis added and original emphasis removed) (quoting former Rule 45(b)(1))). Accordingly, we find Appellants were required to comply with the notice requirement.

Appellants also argue the family court erred in quashing the subpoenas because Father was not prejudiced by the untimely notice as he promptly moved to quash the subpoenas. Appellants assert our rule is modeled after Rule 45 of the Federal Rules of Civil Procedure and the comment to the Federal rule states the purpose of the notice provision is to allow other parties an opportunity to object to the production or request additional documents. *See* Fed. R. Civ. P. 45 cmt. to 1991 Amendment ("The purpose of such notice is to afford other parties an opportunity to object to the production or inspection, or to serve a demand for additional documents or things."); Rule 45, SCRCP, Note to 1993 Amendment ("Rule 45 is amended to conform to federal Rule 45, as amended in December 1991."). However, unlike the federal rule, our Rule 45 includes a time provision in its notice requirement. *Compare* Fed. R. Civ. Pro. 45(a)(4) ("If the subpoena commands the production of documents, . . . , then before it is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party."), *with* Rule 45(a)(4), SCRCP ("If the subpoena commands the production of documents, . . . , then before it is served on the person to whom it is directed, a copy of the subpoena must be served on each party in the manner prescribed by Rule 5(b) *at least ten days before the time specified for compliance*." (emphasis added)). Moreover, our courts have not imposed a prejudice requirement, and we find doing so would nullify the time provision of our Rule 45's notice requirement. *See CFRE, LLC v. Greenville Cnty. Assessor*, 395 S.C. 67, 74, 716 S.E.2d 877, 881 (2011) (providing statutes must be interpreted so that no part is nullified); *Stark Truss Co. v. Superior Constr. Corp.*, 360 S.C. 503, 508, 602 S.E.2d 99, 102 (Ct. App. 2004) (providing the rules of statutory construction apply to procedural rules). Accordingly, we decline to impose such a requirement in the instant case.

Based on the foregoing, we find the family court did not abuse its discretion in quashing the subpoenas, and we affirm. *See Stoney*, 422 S.C. at 594 n.2, 813 S.E.2d at 486 n.2 (stating the family court's procedural rulings are reviewed for an abuse of discretion). Because our finding is dispositive, we decline to address Appellants' remaining arguments regarding the family court's quashing of the subpoenas save for Appellants' assertion that the subpoenas did not impose an undue burden. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not address remaining issues when disposition of a prior issue is dispositive). We review this

ground below because it is the foundation for the family court's award of sanctions against Appellants.

## III.    Undue Burden

Appellants argue the family court erred in finding that the subpoenas imposed an undue burden and expense on Father and Christmas.  We agree.

In its Final Order and the Christmas Order, the family court found the subpoenas issued by Appellants imposed an undue burden and expense on Father and Christmas.  The family court ordered Appellants to pay Father's and Christmas's attorney's fees as a sanction.

Rule 45(c)(1) imposes a duty on the party or "attorney responsible for the issuance and service of a subpoena [to] take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena."  Our courts have interpreted "undue burden" as requesting materials irrelevant to the matter before the court.  *Ex parte Smith*, 407 S.C. 422, 422–23, 756 S.E.2d 386, 386 (2014).  The rule also requires the court to "enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee."  Although procedural rulings are reviewed for an abuse of discretion, whether a duty is breached is a question of fact, and we review the family court's factual findings de novo. *Compare Stoney*, 422 S.C. at 594 n.2, 813 S.E.2d at 486 n.2 (stating the abuse of discretion standard is used to review the family court's procedural ruling), *with id.* at 596, 813 S.E.2d at 487 (stating the de novo standard is used to review the family court's factual findings), *and Estate of Cantrell by Cantrell v. Green*, 302 S.C. 557, 560, 397 S.E.2d 777, 779 (Ct. App. 1990) ("The defendant's breach of the duty of care is a question of fact.").

The subpoenas served on Father, Tillman, and Shores requested (1) copies of Father's tax returns for 2013 through 2015; (2) evidence of any travel reimbursements from Father's law firm; (3) a list of all banks where Father deposited funds in escrow and operating funds along with statements for each account; (4) copies of Father's law firm's tax returns for 2014 and 2015; and (5) Father's 2015 and 2016 (a) profit and loss sheets, (b) year-end balance sheets, and (c) year-end income statement.  The subpoena served on Christmas requested production of (1) a calendar listing every trip she took with Father and Son in the previous year, (2) a list of all individuals accompanying them on those trips and

their contact information, and (3) any and all proof of travel expenses for each trip. Father argues that because he stipulated at trial that he could pay any attorney's fees awarded to Mother, his financial information was not relevant.

We find the family court erred in ruling the subpoenas imposed an undue burden and expense on Father and Christmas. *See Smith*, 407 S.C. at 422–23, 756 S.E.2d at 386 (stating a subpoena imposes an undue burden when it requests information irrelevant to the proceedings). When viewed in the context of the issues that arose out of the contempt action, we find the information requested by Mother was relevant. Mother and Father both sought attorney's fees in their pleadings; therefore, Father's financial information and whether Father or Christmas paid for their vacations was relevant to that issue. Although Father later stipulated at trial that he could pay any attorney's fees awarded to Mother, the requested financial information only became irrelevant after the stipulation. Therefore, we find the requested financial information was relevant at the time the subpoenas were issued.

As to the subpoenas' requests for Father's personal and work travel history, we find this information was relevant to Father's requested relief of a visitation modification. The Note to Family Court Rule 14(b) states that under a rule to show cause, the family court can consider reasonable requests, such as a visitation modification, if it is in the child's best interest. In his Affidavit, Father asked the court to "modify [his] parenting time (visitation) with [Son] for *all weekends, holidays*[,] *and summer* in consideration of" Mother's alleged contemptuous conduct. (emphasis added). At trial, Father asserted that he did not request every weekend and holiday, but this testimony contradicts the plain language of his Affidavit. *See Murdock v. Murdock*, 338 S.C. 322, 334, 526 S.E.2d 241, 248 (Ct. App. 1999) (stating pleadings in family court are liberally construed). Mother testified Father had an extensive travel schedule and information regarding Father's work and personal travel practices was relevant to the family court's consideration of Son's best interest in determining whether a visitation modification was warranted. *See Smith*, 407 S.C. at 422–23, 756 S.E.2d at 386 (stating a subpoena imposes an undue burden when it requests information irrelevant to the proceedings). Additionally, modification of the number of days Son is with Mother would potentially impact the amount of child support owed pursuant to the South Carolina Child Support Guidelines. Although the information became irrelevant once the family court assured Mother that it would not make such a sweeping modification, this assurance also occurred after the subpoenas were issued. Accordingly, we find the requested information was relevant at the time of the subpoenas' issuances.

Moreover, the family court's finding of undue burden is not supported by the record.  The family court based its ruling on counsels' arguments.  *See Ex parte Morris*, 367 S.C. 56, 64, 624 S.E.2d 649, 653 (2006) ("[T]he family court may not base necessary findings of fact . . . solely on counsel's statements of fact or arguments.").  Father, Shores, and Tillman presented no evidence showing the cost of complying with the subpoenas, that the subpoenas imposed an undue burden, or that compliance caused them to incur undue expenses.  *See* Rule 45(c)(1) (providing a party or "an attorney responsible for the issuance and service of a subpoena" has a duty to "take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena").  Christmas provided checks, and her attorney testified that Christmas paid $140 for childcare while she looked for the requested documents; however, we find this is not an excessive amount.  Christmas also offered no evidence that complying with the subpoenas imposed an undue burden.  Therefore, we hold the family court erred in finding the subpoenas imposed an undue burden and expense on the served individuals, and we reverse the family court on this issue.  *See Stoney*, 422 S.C. at 596, 813 S.E.2d at 487 (stating the de novo standard is used to review the family court's factual findings).

## IV.    Remedies

Because we reverse the family court's findings of contempt, we also reverse the imposed sanctions and modifications to the Divorce Decree.  Further, based on our de novo review, we find neither party is entitled to attorney's fees.  *See Scheibner v. Wonderly*, 279 S.C. 212, 214, 305 S.E.2d 232, 233 (1983) (reversing the family court's contempt ruling and finding, based on the preponderance of the evidence, neither party should receive attorney's fees).  The record reflects that both Mother's and Father's conduct preceding and present throughout the case contributed to the case's difficult circumstances and complicated its resolution.  Therefore, each party shall be responsible for his or her attorney's fees.  *See Brown v. Brown*, 408 S.C. 582, 587, 758 S.E.2d 922, 924 (Ct. App. 2014) (providing a party's conduct is a proper consideration in determining whether to award attorney's fees); *see generally Lewis v. Lewis*, 400 S.C. 354, 372, 734 S.E.2d 322, 331 (Ct. App. 2012) (noting parties' uncooperative behavior that prolongs litigation can justify holding each responsible for his or her attorney's fees); *Patrick v. Britt*, 364 S.C. 508, 514, 613 S.E.2d 541, 544 (Ct. App. 2005) (considering how a party's behavior complicated the litigation).  Additionally, because we reverse the family court's findings that the subpoenas imposed an undue burden, we also reverse the family court's sanctions of Father's and Christmas's attorney's fees against Appellants.

**CONCLUSION**

Accordingly, the family court's orders are

**AFFIRMED IN PART AND REVERSED IN PART.**

**KONDUROS and HILL, JJ., concur.**